(No. 2339. Aug. 19, 1919.)

## LAWRENCE COAL CO. v. SHANKLIN.

SYLLABUS BY THE COURT.

1.   A corporation may ratify an unauthorized agreement of another person, made in its behalf, and by such ratification become bound thereby.                                    P. 407

2.   The principal must ratify the whole of the agent's unauthorized act, or not at all, and cannot accept its beneficial results, and at the same time avoid its burdens.       P. 407

3.   Where for a sufficient consideration one agrees to assume and pay the debt of another, the creditor is impliedly included as within the privity of the promise, and he may single out the promisor and sue him by direct action.    P. 407

Appeal from District Court, McKinley County; Raynolds, Judge.

Suit by L. G. Shanklin against the Lawrence Coal Company. Judgment for plaintiff, and defendant appeals. Affirmed.

A. T. HANNETT, of Gallup, for appellant.

E. A. MARTIN, of Gallup, and McFIE, EDWARDS & McFIE, of Santa Fe, for appellee.

## STATEMENT OF FACTS.

This is a suit by L. G. Shanklin against the Lawrence Coal Company, a corporation, to recover upon an open account for goods, wares and merchandise of the value of $718.52, alleged to have been sold to the Leyba Coal Company, and as to which it is alleged the defendant ''accepted said account and agreed to pay the same.'' The facts are set out in the opinion.

### OPINION OF THE COURT.

BRICE, District Judge. The testimony in this case is contradictory. It appears that Eleuterio Leyba was in the coal mining business under the name of the Leyba Coal Company in McKinley county, and, having gotten behind with his creditors, agreed to sell a one-half interest in his business to F. S. Lawrence. At the time of such agreement, it does not appear from the evidence whether or not the defendant corporation had been organized; but, if so, no board of directors had been elected, nor had it any officers authorized to transact its business. Leyba testified that Lawrence was acting for the Lawrence Coal Company when he contracted with Leyba for the one-half interest in his property. He also testified that Lawrence was to pay him $10,000 for such interest, assuming as part payment $8,000 indebtedness; the account sued upon being a portion of such indebtedness assumed.

On December 20, 1917, prior to the election of direc-
tors and officers of the Lawrence Coal Company, F. S.
Lawrence wrote upon the account of plaintiff against
Leyba, the following:

> "The above account to be paid by Lawrence Coal Company.
>
>                                   F. S. Lawrence."

After the corporation was organized and officers
elected, it wrote upon a bill of account sent to it, request-
ing payment of such debt, the following:

> "Do not send this bill to Lawrence Coal Company. They
> are not responsible for it. Goods purchased by E. Leyba.
>
>                                   F. S. Lawrence."

F. S. Lawrence testified that he did not hold any office
with the Lawrence Coal Company at the time of the
transaction hereinbefore narrated; that he was only one
of the original incorporators of the company. However,
he did testify that the Lawrence Coal Company bought
the land which was the subject of the contract herein-
before mentioned from Leyba and his wife, and intro-
duced a deed in evidence, executed by them, conveying
such property to the corporation in consideration of
"one dollar, and other valuable consideration," but
stated that they bought no other real property from the
Leybas.

There is testimony of both Lawrence and Leyba to the
effect that Lawrence made the trade personally; also
testimony of Lawrence to the effect that he agreed to
and did personally pay the debts of Leyba up to $6,500
for the one-half interest in the property; that said prop-
erty was conveyed to the corporation with the under-
standing that it should value it at $13,000, and that its
stock be apportioned equally between him and Leyba.
The court seems not to have believed this testimony, but
rendered his decision upon the theory that Lawrence
contracted for the half interest in the Leyba property
for the Lawrence Coal Company, and that defendant

company ratified the contract made by Lawrence for its benefit, although at the time made it was unauthorized; and there is substantial testimony to support this theory.

The question to be determined by this court is: Could the corporation, having received the benefits of the contract made in its behalf by an unauthorized person, and such benefits having been retained, refuse to pay the consideration agreed to be paid therefor, having full knowledge of the terms of such contract? While there is a dispute as to the consideration to be paid for the Leyba property, the court evidently accepted the testimony of Leyba, and found that Lawrence had agreed to pay the debt of plaintiff as a part thereof, and had made a memorandum in writing to that effect.

[**1, 2**] That a corporation may ratify an unauthorized agreement of another person, made in its behalf, so that it will become bound thereby, is well settled. Western Homestead & Irrigation Co. v. First National Bank, 9 N. M. 1, 47 Pac. 721; Elliott on Contracts, § 459; 2 C. J. 473 et seq. It is further well settled that the principal must ratify the whole of the agent's unauthorized act, or not at all, and cannot accept its beneficial results and at the same time avoid its burdens. The corporation accepted a deed to the property from Leyba and wife, and in doing so it is required to pay the consideration its unauthorized agent agreed to pay, and of which it had full knowledge through such agent, who subsequently became president of the corporation, and was president of the corporation at the time the deed was made from Leyba and wife to it. This proposition of law is so general that we merely call attention to the authorities cited in 2 C. J. at page 493 et seq.

[**3**] The contention made, that the entire testimony only bound Lawrence, is not thought to be correct under the conclusion we have reached as stated above. Neither do we look upon the transaction as an agreement upon the part of the corporation to answer for the debt, default, or miscarriage of another, nor that it was a con-

tract in the nature of a suretyship; but it became a direct contract on the part of the corporation with Leyba when the conveyance was accepted by it, and the agreement to assume certain debts in consideration thereof inured to the benefit of the creditors, whose accounts he agreed to pay. The act of ratifying the contract made by Lawrence for the benefit of the corporation made the corporation primarily liable to the plaintiff for the debt sued on; the assumption to pay this debt being a part of the consideration for the land.

"It is well-settled doctrine that, where one for a sufficient consideration agrees to assume and pay the debt of another, the creditor is impliedly included as within the privity of the promise, and he may single out the promisor and sue him by direct action." Malanaphy v. Mfg. Co., 125 Iowa, 719, 101 N. W. 640, 106 Am. St. Rep. 332.

This action is not within the statute of frauds. Greenlees v. Roche, 48 Kan. 503, 29 Pac. 590. We believe that these observations dispose of all the assignments of error.

Finding no error in the record, the judgment of the district court should be and is accordingly affirmed; and it is so ordered.

PARKER, C. J., and ROBERTS, J., concur.