## KELLY v. RICHARDS et al.

No. 5600.   Decided November 4, 1938.   (83 P. 2d 731.)

*Henry D. Moyle* and *Mr. Willis W. Ritter,* both of Salt Lake City, for appellant.

*Badger, Rich & Rich,* and *E. A. Rogers,* all of Salt Lake City, for respondents.

LARSON, Justice.

The only question presented by this appeal is: Did the complaint of the plaintiff state a cause of action? The District Court of Salt Lake County held it did not, plaintiff declined to amend, the action was dismissed, and plaintiff assigns error. The action was brought to recover a judgment against defendants for $35,000 as moneys defendants were obligated to pay into the capital stock of the Tri-State Motors, Incorporated, a defunct corporation of which plaintiff is receiver. In the complaint, after certain formal allegations, it is charged that prior to the 24th day of September, 1929, the Richards-Barlow Motor Company, whose name was later changed to Tri-State Motors, Incorporated, had applied for a franchise or distributorship of Willys-Overland automobiles in Utah, southern Idaho, and western Wyoming, and then alleges:

"4. That prior to September 24, 1929, the said Willys-Overland, Incorporated, notified the Richards-Barlow Motor Company and the defendants herein as stockholders of said company, that this distributorship would be granted them, as requested, provided the Richards-Barlow Motor Company acquires paid in capital of not less than $50,000,00.

"5. That on or about the 24th day of September, 1929, the Richards-Barlow Motor Company and the defendants herein wrote the said Willys-Overland, Incorporated, a letter, in words and figures as follows, to wit:

" 'Salt Lake City, Utah

" 'Willys-Overland, Inc.           " 'September 24, 1929

" '405 Continental Bank Bldg.

" 'Salt Lake City, Utah.

" 'Gentlemen:

" 'Complying with your request, we are submitting for your approval the following statement:

*Our Net Worth* as shown by our Statement of August 1st,

1929, was approximately ............................. $10,000.00

We now have *Paid In by our Stockholders an additional* .... 5,000.00

Should we be granted the Willys Knight and Whippet Distributorship we will agree that on or before October 1st, 1929, we will *have available an additional* .............. 10,000.00
by October 15th, 1929, an additional .................... 10,000.00
by January 15th, 1930, an additional ................. 15,000.00
Making a Total of Paid in Capital ..................... $50,000.00

" 'It is understood also that we will immediately start or make preparations and plans for a new building, in a suitable location, which can be occupied within the next ninety (90) days.

" 'Very truly yours,
" 'Richards-Barlow Motor Co.,

" 'By M. R. Richards
 " 'Treasurer
" 'Stockholders:
  " 'Geo. A. Allen
  " 'Wm. L. Rich
  " 'P. E. Roberts
  " 'John H. Barlow
  " 'Ira C. Holbrook
  " 'Richard Stringham'

"6. That said letter was written and delivered by the defendants, *to be relied upon and accepted as a contract by the* Willys-Overland, Incorporated, *and for the sole purpose of inducing the Willys-Overland,* Incorporated, in so accepting and relying thereon, *to grant to the Richards-Barlow Motor Company said distributorship and the credit allowed incident thereto,* and for the benefit of the Richards-Barlow Motor Company, in which defendants and each of them were then personally interested as stockholders." (Italics added.)

It is then alleged that thereafter the Willys-Overland, Incorporated, granted the distributorship to the Richards-Barlow Motor Company; that the latter changed its name to Tri-State Motors and operated the business of the distributorship, and then sets out:

"That the said Tri-State Motors, Incorporated, *with the defendants herein as its officers and stockholders,* advertised openly and publicly and continuously throughout the territorial limits of its said distributorship the fact that it was the distributor and held and maintained said distributorship so granted by the Willys-Overland, Incorporated, as aforesaid, and that the defendants herein, as its stockholders, *had guaranteed* to it a paid in capital of $50,000.00 by January 15, 1930, and by means thereof established and received credit from its numer-

ous creditors, as hereinafter more specifically set forth, and otherwise fully and completely received and accepted the benefit of said contract as fully executed by the Willys-Overland, Incorporated, as aforesaid.

"9. That except for its said distributorship so obtained, as aforesaid, the said Tri-State Motors, Incorporated, could not and would not have established or obtained said credit."

The $35,000 was never paid into the company; in about three months it became insolvent, and this action followed. It does not appear from the complaint how many creditors there are, the amount of debts, or whether Willys-Overland is a creditor. Neither does it appear from the complaint how many or who were stockholders in the Tri-State Motors, Incorporated, or who were its officers. The parts of the complaint quoted are all that are germane to the issue and the complaint must stand or fall upon those allegations. Appellant advances three theories upon one or all of which he contends his complaint is sufficient. We state them and shall note them in order.

1. The averments of the complaint show facts from which may be inferred an agreement on the part of the defendants (respondents) to subscribe for the shares of an increase of capital stock.

2. The averments of the complaint show facts which estop the defendants as against crediors to deny that they guaranteed to Tri-State Motors a paid capital of $50,000.00 by January 15, 1930.

3. The averments of the complaint show a contract between the defendants and Willys-Overland, Incorporated, for the benefit of a third party, to wit: The creditors of Tri-State Motors.

We have set forth above all the facts alleged as far as helpful in any way in testing the pleading.

1. Do the facts pleaded state a cause of action on the theory that defendants subscribed for or agreed to subscribe for an increase in capital stock of the company?

There is no allegation that defendants subscribed for any additional stock and no allegation that they agreed to subscribe for any additional stock; there is no allegation that the capital stock was increased, or that any capital stock was offered for sale or available for subscription; there is no allegation as to how much stock any of defendants had subscribed for or promised to take and no allegation that any defendant had failed to take or pay for any stock he had agreed to purchase. There is no allegation that there was any agreement or contract between the Richards-Barlow Motor Company, or the Tri-State Motors, Incorporated, on one hand and the defendants on the other hand, for the subscription or sale of stock. The most that can be claimed is that defendants promised not the Richards-Barlow Company but the Willys-Overland that in event of certain actions by Willys-Overland Incorporated, they would undertake to provide in some way additional capital for the business of the distributorship. We do not wish to be understood as saying that the complaint justifies such a construction but merely that for the purposes of this question that is the most that could be claimed for it. And assuming for the moment such construction, there is then no allegation that the Tri-State Motors ever acquired any rights to, in, or under, any promise to, or agreements by defendants with the Willys-Overland, Incorporated, and no allegations that Willys-Overland is a creditor of the Tri-State Motors. It is elementary that where one seeks to recover under a contract he must allege the making of the contract either with him or with some one under whom he claims. We are concerned here with a question of pleading, not of proof. The fact that upon trial a contract may be inferred or found from facts and conduct shown in evidence, without the making of the contract being proved by direct evidence thereof, does not change the fact that in suing upon a contract the making or existence of the contract must be alleged and also plaintiff's rights thereunder. There are no allegations here of the making or existence of a contract between Tri-State

Motors and the defendants, nor of how plaintiff acquired any rights under any contract made with any other party; there are no allegations of any debt due from defendant to plaintiff, making a basis for a contract of subscription to capital stock, and the complaint upon that theory does not state a cause of action.

2. Does the complaint state a cause of action on the grounds of estoppel? Does it properly and sufficiently aver facts to estop the defendants from denying that they guaranteed the payment into the treasury of the Tri-State Motors of $35,000 in new capital? It is elementary that as a matter of pleading an estoppel in pais exists only when facts are alleged which show that one person has by his words, deeds, or conduct so behaved that another person in good faith relying upon such conduct has been intentionally led thereby to change his position for the worse and who would not so have changed his position except for the conduct of the other party.

"This estoppel arises when one by his acts, representation, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for the truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth, and to deprive the party who has acted upon it of the benefit obtained." 21 Corpus Juris, pp. 1113, 1114, 1115.

"Essential Elements—a. In General.

"In order to constitute this kind of estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice. To constitute an 'estoppel in pais' there must concur an admission, statement, or act inconsistent with the claim afterward asserted, action by the other party thereon and injury to such other party. There can be no estoppel if either of these elements are wanting. They are each of equal importance." 21 Corpus Juris, pp. 1119, 1120. See, also, Pom-

eroy's Equity Jurisprudence (4th Ed.) p. 1644; Bigelow on Estoppel (6th Ed.) pp. 603, 604.

It is essential therefore that the representation, whether it arises by words, acts or conduct, must have been of a material fact; that it must have been willfully intended to lead the party setting up the estoppel to act upon it or that there must have been reasonable grounds and cause to think that because thereof he would change his position or do some act or take some course on faith in the conduct, and that such action results to his detriment if the person sought to be estopped may now repudiate the words or interpretation placed upon such conduct. This does not require an actual intent to defraud but only that the circumstances and conduct were such as would perpetrate a fraud or unfair advantage if the party could now deny what he had induced or suffered another to believe and act upon. It is an essential element of estoppel in pais that the person involving it relied upon the representation or conduct of the other party, was influenced in his own conduct by it, and would not have acted as he did but for the acts of which he now complains. If complainant's act appears to be the result of his own will or judgment, if it does not appear to be the proximate result of the conduct or representations of the adverse party, there is no estoppel. The conduct must of itself have been sufficient to warrant or induce the course of conduct by the party seeking to invoke estoppel and it must have been made for the purpose of inducing such response and action by the complainant. We do not mean that these are all the elements, nor that in every case all must co-exist equally but some of these elements must be present in every estoppel. By them therefore we shall test this pleading.

The only representation of which complaint is made is that defendant would guarantee added capital of $35,000. There is no allegation that such representation in the letter was intended to affect, or made for the purpose of affecting the plaintiff or the creditors he represents. On the con-

trary it is specifically alleged that the letter was written to and delivered to the Willys-Overland, Incorporation, to be relied upon by it, "and for the sole purpose of inducing the Willys-Overland, Incorporated * * * to grant to the Richards-Barlow Motor Company said distributorship." This not only fails to allege a necessary element of estoppel but expressly negatives it by alleging the contrary. And again, there is no allegation that plaintiff or the creditors he represents relied upon or acted upon such representation as to capital stock. The complaint, paragraph 9, negatives such reliance by alleging affirmatively that the creditors relied upon the fact that the company had the Willys-Overland distributorship, and "except for such distributorship" the credit would not have been extended. The existence of the distributorship is pleaded as true and an actual fact. There is no allegation that complainants suffer or stand to suffer any detriment by virtue of the claimed representation as to capital stock founded upon the letter to Willys-Overland. There is not even any allegation that complainants knew of the existence of the letter written to the Willys-Overland or of its contents. And had complainants known of the letter it would still avail them nothing because it is expressly alleged as quoted above that they relied upon and granted the credit expressly upon the existence of the distributorship. There is an allegation that the Tri-State Motors advertised that it had the distributorship (which was true and pleaded as true) and an indirect allegation that the company advertised that the defendants had guaranteed a paid in capital of $50,000 to Tri-State Motors, but there is no allegation or claim the complainants believed or relied upon any such statement or advertisement. Neither is there any allegation that defendants had in fact made any such guarantee. There is no allegation that defendants or any of them knew the company was so advertising, nor the length of time, nor when such advertisements were made so as to lay a basis for implied knowledge, nor is there any allegation that such advertising was done before the claims or debts due complain-

ants were incurred. Without going further into the short-comings of the complaint we have no hesitancy in holding that it does not state a cause of action on any theory that involves an estoppel of defendants.

3. Does it state a cause of action on the theory of a contract for a third party beneficiary? Again we answer it does not.

"Third persons beneficiaries under a contract, although not parties to it, may be divided into three classes:

"1. Such person is a donee beneficiary if *the purpose of the promisee in obtaining the promise* of all or part of the performance thereof, is to make a gift to the beneficiary, or to confer upon him a right against the promisor to some performance neither due (nor supposed) or asserted to be due from the promisee to the beneficiary;

"2. Such person is a creditor beneficiary if no intention to make a gift appear from the terms of the promise, and performance of the promise will satisfy an actual (or supposed) or asserted duty of the promisee to the beneficiary;

"3. Such person is an incidental beneficiary if the benefits to him are merely incidental to the performance of the promise and if he is neither a donee beneficiary nor a creditor beneficiary." Williston on Contracts, Revised Edition, Vol. 2, Section 356.

An incidental beneficiary cannot maintain an action on the contract. To maintain this action, plaintiff or the creditors he represents must fall within the first or second class. It is evident they are not donee beneficiaries. Under the pleadings are they creditor beneficiaries?

It is characteristic of the creditor beneficiary contract that the promisee intends to benefit himself by securing the payment of his debt or the performance of his duty to his creditor, and it seems that in the present case the parties are turned around. Surely the promisee (Willys-Overland, Incorporated) owes nothing to the present or anticipated creditors of its promisor. It is hard to see the promisee's duty of any sort to the claimed beneficiaries. The Utah case of *Smith* v. *Bowman,* 32 Utah 33, 88 P. 687, 9 L. R. A., N. S. 889, involves a suit on a building contractor's bond, in which the court denied recovery by the supposed third party bene-

ficiaries on the ground that the contract did not express an intention of benefiting them, saying that "the liability of a surety on his bond is entirely dependent upon his covenants and agreements so construed as not to extend the liability by implication beyond the terms of his contract." In the creditor beneficiary situation the promise is an asset of the promisee and only certain creditors can take advantage of it. In the present case the promise to the promisee is doubtless an asset of the promisee but the parties who are now trying to take advantage of it are not in the debtor-creditor relationship with the promisee.

In a case in which a lumber dealer made a contract with the owner of a house providing for the employment of a certain contractor, the South Dakota court held that the contractor could not enforce this contract. (*Hollister* v. *Sweet,* 32 S. D. 141, 142 N. W. 255.) The contract was not made for the contractor's benefit and an indirect right did not exist since the promisee was under no obligation to the plaintiff. The mere fact that a person is to be benefited by the performance of a contract between other persons does not give him a right.

The rule of allowing the third party beneficiary to recover is recognized now in America because it is reasonable and is not merely accepted as a flat rule of law. It is just and expedient to allow the person for whose benefit the contract is made to enforce it against the person whose duty it is to pay. However an incidental beneficiary has no rights under the contract. *Robins Dry Dock & Repair Co.* v. *Flint*, 275 U. S. 303, 48 S. Ct. 134, 72 L. Ed. 290 and *German Alliance Ins. Co.* v. *Homewater Supply Co.*, 226 U. S. 220, 33 S. Ct. 32, 57 L. Ed. 195, 42 L. R. A., N. S., 1000, are to the effect that before a third party can sue for a breach of a contract to which he was not a party he must show that the contract was intended to benefit him directly. The terms of the agreement and the facts and circumstances that surround its making can be examined to determine whether the supposed beneficiary was in fact intended to be such, provided the

proper allegations are made under which such evidence may be received, that is, provided the pleadings show the contract made for his benefit.

"A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefited does not give him a right to sue for its breach." Vol. 12, American Jurisprudence. Contracts, Section 282; *Baxter* v. *Camp*, 71 Conn. 245, 41 A. 803, 42 L. R. A. 514, 71 Am. St. Rep. 169.

"A stranger may benefit by a contract if promises are made where the promisee has no pecuniary interest in the performance of the contract, his object being to enter into it for the benefit of such stranger, or where the promisee seeks indirectly to discharge an obligation of his own to the stranger by securing from the promisor a promise to pay such person." Vol. 12, American Jurisprudence, Contracts, Section 283.

The complaint in the case before us fails to show or allege that plaintiff or the creditors he represents, or the company of which he is receiver, was named as a beneficiary, or that it was intended by the defendants or by Willys-Overland, Incorporated, that the creditors or receiver should benefit by the promise made to the Willys-Overland Company. There is no allegation in form or substance that the alleged contract was made for the benefit of the creditors, nor is there alleged any of the necessary elements of a cause of action on such a contract. Appellant cites no authorities to sustain the position that the allegations of the complaint are sufficient in this regard, nor does he advance any reasoning to uphold such position, and we have been unable to find any cases supporting plaintiff's position on this question.

Since we hold the complaint insufficient on any theory, it is unnecessary to consider whether or to what extent the court could refer to the allegations of the answer in determining the sufficiency of the allegations of the complaint.

The judgment of the trial court is affirmed. Costs to respondents.

FOLLAND, C. J., and HANSON, MOFFAT, and WOLFE, JJ., concur.