NEW AMSTERDAM CASUALTY COMPANY, Appellee and Cross-Appellant,

v.

Gladys N. WALLER, Appellant and Cross-Appellee.

No. 8889.

United States Court of Appeals Fourth Cricuit.

Argued April 1, 1963.

Decided Sept. 16, 1963.

---

Albert V. Bryan, Circuit Judge, dissented in part.

Charles B. Nye, Durham, N. C., for appellant and cross-appellee.

C. K. Brown, Jr. and Willis Smith, Jr., Raleigh, N. C. (Smith, Leach, Anderson & Dorsett, Raleigh, N. C., on brief), for appellee and cross-appellant.

Before HAYNSWORTH and BRYAN, Circuit Judges, and HARRY E. WATKINS, District Judge.

HAYNSWORTH, Circuit Judge.

Cross appeals bring this case before us once again, each of the parties tendering a variety of questions.

Upon instructions of the judgment debtor, Waller, his employer mailed all of his salary checks to Mrs. Waller or to her agent. Out of the funds thus coming into her hands, Mrs. Waller accumulated some $12,000, which she used to construct a house at a cost of approximately $34,000 upon a lot which she had acquired in her name. The construction cost in excess of the $12,000 cash she had accumulated, was financed through a mortgage loan. Thereafter, largely out of her husband's funds coming into her hands, she regularly made payments upon the mortgage. At all relevant times, she knew of the existence of the unsatisfied judgment against her husband.

The judgment creditor instituted this action against Mrs. Waller to subject the equity in her house to its judgment against the husband. The action was commenced more than three years after the construction of the house and the disbursement of the $12,000.

Originally, the District Court held that there had been a fraudulent transfer of the $12,000, and that the house should be subjected to the payment of the judgment. It held that the applicable period of limitations was not the three years governing actions founded upon fraud, but ten years governing actions to enforce resulting trusts.[1]

On appeal, we took a different view of the limitations question, holding that the applicable limitations period was three years, but we remanded the case for further consideration since it appeared on the record that the wife, within the period of limitations, had made a number of payments on the principal of the mortgage out of the funds of her husband.[2]

Upon the remand, the District Court found that during the 3-year period immediately preceding the filing of this action, the sum of $6,075.06 had been paid upon the principal of the mortgage, of which $2,000 had been paid by a son of the Wallers, while the remaining $4,075.06 had been paid by Mrs. Waller out of funds supplied her by her husband. In addition, there had been paid to the mortgagee some $2,188.94 in interest. The District Court subtracted from the $4,075.06 paid by Mrs. Waller upon the principal of the mortgage debt the sum of $500, being the amount of the personal property exemption of a judgment debtor under Article X, § 1 of the North Carolina Constitution. Judgment was thus entered for the judgment creditor in the amount of $3,575.06, with interest from the date upon which the complaint was filed.

The defendant, on her appeal, contends that the plaintiff should recover nothing, for it should not have been allowed to shift the theory of its case. She also contends that no interest should have been allowed. On its appeal, the plaintiff contends that it had insufficient notice of the fraudulent transfers to start the running of the Statute of Limitations until shortly before the action was commenced, and that it is thus entitled to recover the $12,000 cash fund expended by the defendant, as well as the mortgage payments made more than three years before the action was commenced. It contends it is entitled to recover the interest paid by Mrs. Waller to the mortgagee and should be allowed interest on all payments made on the mortgage from the date of payment. It objects to the reduction of the judgment by the amount of the personal property exemption, and contends it should have been allowed to file a supplemental complaint bringing

---

1. D.C., 196 F.Supp. 780.

2. 4 Cir., 301 F.2d 839.

into question all payments on the mortgage subsequent to the filing of the complaint and up to the date of the hearing.

Generally, we affirm the rulings of the District Court, though we think the judgment should not have been reduced by the amount of the personal property exemption, and that leave to file a supplemental complaint should have been granted.

## I

### Stipulation, Bearing on Theory of Case, as Bar to Recovery

In Michael v. Moore, 157 N.C. 462, 73 S.E. 104, the Supreme Court of North Carolina held on comparable facts that the judgment creditor was entitled to recover the value of the improvements notwithstanding a jury's finding that there was no actual intent to defraud when the husband's funds were used to improve the wife's property. It held that the wife was a constructive trustee and held her to account as such. The Court in Michael v. Moore was not concerned with the question of limitations, but the plaintiff here, in an effort to avoid the shorter 3-year limitations period, insisted that it was not claiming any actual fraud, that it was entitled to judgment even though there was no actual fraud, and that the limitations period applicable to actions founded upon fraud did not govern the case. It stipulated that it was "not depending upon" the North Carolina statutes governing fraudulent conveyances.[3]

In disposing of the limitations question, we held that the cause of action was based upon fraud. It is dependent upon the statutes, though the North Carolina statutes are substantially a re-enactment of 13 Eliz. c. 5 § 2,[4] which, with respect to the rights of existing creditors, was declarative of the common law.[5] The defendant, therefore, insists that a judgment may not now be entered for the plaintiff when it is supportable only upon a theory which the plaintiff had disclaimed in its formal stipulation.

A judicial admission is usually treated as absolutely binding, but such admissions go to matters of fact which, otherwise, would require evidentiary proof. They serve a highly useful purpose in dispensing with proof of formal matters and of facts about which there is no real dispute. Once made, the subject matter ought not to be reopened in the absence of a showing of exceptional circumstances, but a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission.[6]

The doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case. When counsel speaks of legal principles, as he conceives them and which he thinks applicable, he makes no judicial admission and sets up no estoppel which would prevent the court from applying to the facts disclosed by the proof, the proper legal principles as the Court understands them.

This is the whole theory of modern developments in rules of pleading and procedure. Under the Federal Rules of Civil Procedure, which govern here, a plaintiff in his complaint is required only to set forth "a short and plain statement of the claim."[7] He need not set forth any theory or demand any particular relief for the court will award appropriate relief if the plaintiff is en-

3. General Statutes of North Carolina §§ 39–15, 39–17.

4. Bank v. Adrian, 116 N.C. 537, 21 S.E. 792.

5. See Long v. Wright, 48 N.C. 290.

6. See 9 Wigmore on Evidence (3d ed.) § 2590. Wigmore deals, generally, with the subject of judicial admissions, beginning with § 2588.

7. Rule 8(a) (2); see Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Arthur H. Richland Company v. Harper, 5 Cir., 302 F.2d 324.

titled to it upon any theory.[8] Under this liberalized practice, a party's misconception of the legal theory of his case does not work a forfeiture of his legal rights.[9]

The defendant's suggestion, that counsel's adherence to an insupportable legal theory is an irrevocable judicial admission, is a reversion to an earlier day when claims and defenses of merit were forfeited by a misstep in the negotiation of tortuous procedural paths. Then, in many contexts, misconception of the substantive right could lead to procedural mistakes which controlled the court's decision. The present rules, however, have relegated such perils to the past. The purpose of their adoption was broader than the simplification of procedures for the convenience of lawyers and judges. They were designed for the protection of the diligent litigant who has a just cause, but who, during some stage of the proceedings, misconceived the nature of his cause or mistook his remedy. In this day, a party ought not and does not lose his right when his counsel, however formally, advances an erroneous legal theory. If, on the facts disclosed, the party is entitled to some relief, it is the duty of the court to award it.

The question with which we dealt on the previous appeal had not been considered in any illuminating opinion by the Supreme Court of North Carolina. If its answer was not obscure, there was more than superficial support for the plaintiff's theory in isolated statements of that court that a constructive trust might arise in the absence of fraud, actual or constructive. The very fact that the District Court, in the first instance, agreed with the plaintiff on the limitations question attests the fact that the plaintiff's original legal position was not beyond the range of arguability. But whatever may now be said of its merit or demerit, it was simply the plaintiff's notion of a legal theory which would support its recovery of all that it claimed. The fact that we refused to accept its theory, is no basis for withholding the more limited relief available on the legal theory that the court does approve, though the theory which the court was persuaded to accept had been disclaimed by the plaintiff when it sought the whole loaf.

## II

### Plaintiff's Notice of the Fraudulent Transfer

The plaintiff contends that it did not have sufficient notice of the fraudulent transfers until shortly before commencement of this action on December 28, 1959. In proceedings supplemental to the original action in which it obtained its judgment, however, the plaintiff had examined Mr. Waller on August 27, 1956. It now contends that some of Mr. Waller's answers were untruthful and misleading, and, on that account, it was not sufficiently informed of the actual situation to start the running of the statute. Mr. Waller, however, plainly stated that his employer, at his request, sent all of his salary checks to Mrs. Waller which she deposited to her account, and that he never saw them. It also appeared that she made the payments on the mortgage. Though Mr. Waller claimed in 1957 that his son and the two daughters made contributions to a fund out of which mortgage payments were made, it clearly appeared that some of his funds had

8. See Conley v. Gibson, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80, followed in Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988; Dann v. Studebaker-Packard Corporation, 6 Cir., 288 F.2d 201, 216; United States v. Martin, 10 Cir., 267 F.2d 764, 771; Dotschay v. National Mutual Insurance Company, 5 Cir., 246 F.2d 221, 223; Hamill v. Maryland Casualty Co., 10 Cir., 209 F.2d 338, 340.

9. See United States v. Martin, 10 Cir., 267 F.2d 764, Dotschay v. National Mutual Insurance Company, 5 Cir., 246 F.2d 221; Hamill v. Maryland Casualty Co., 10 Cir., 209 F.2d 338; Kansas City, St. L. & C. R. Co. v. Alton R. Co., 7 Cir., 124 F.2d 780. See also Rule 54(c); 6 Moore's Federal Practice (2d ed.) ¶ 54.60 p. 1203, et seq.

been used by his wife for the construction of the house or curtailment of the mortgage. Indeed, in a stipulation in this action, the parties agreed that the facts alleged in the complaint were derived, in the main, from the adverse examination of Mr. Waller in 1956. That is a judicial admission, which the plaintiff should not now be allowed to controvert.

The 3-year period of limitations governing actions based upon fraud does not commence to run until the plaintiff has notice of the fraud, but the notice which starts the running of the statute is not complete information of all details of the transaction. The statute starts to run when the plaintiff acquires sufficient information to give rise to a reasonable belief that a fraudulent conveyance has occurred. It is enough when he has sufficient information to put a reasonable person on notice that further inquiry is called for. The plaintiff could not tell from what Mr. Waller disclosed in 1956 how much of Mrs. Waller's equity in the house had been purchased with her husband's funds, but it knew that some of the husband's funds had been used for that purpose, and that Mrs. Waller had no other income or means of support. What the plaintiff then knew was quite enough to put it on notice that a fraudulent transfer had occurred and to put upon it the onus of further inquiry.

### III

### The Constitutional Exemption
### from Levy

In the first appeal, Mrs. Waller contended that North Carolina's constitutional provision,[10] granting to a judgment debtor an exemption from levy of personal property equal in value to $500, immunized the husband's gifts to her since he gave her no more than $500 at any one time. We summarily disposed of the contention, for the exemption can be claimed only at the moment of levy

and is not a sword for the frustration of the laws relating to fraudulent conveyances. On remand, the same exemption was again asserted, now in a different context, and the District Court reduced the judgment it otherwise would have entered by $500, the amount of the constitutional exemption. In doing so, we think it was mistaken.

We would not have supposed that the fraudulent donee could claim the personal property exemption of the fraudulent donor. If he has given away his property so that, as between him and the donee, he has no legal or equitable claim to it, he hardly has standing to say that his creditor may not have a portion of it. If there were a resulting trust, if donor and donee had agreed that the property was actually the husband's, placed in the wife's name only to circumvent his creditors and would be reconveyed by the wife to the husband upon his demand, then, of course, it was not a fraudulent conveyance in the sense that we have used the term, and the wife, rather than being a constructive trustee would be the trustee of a resulting trust. In that event, the property would be the husband's and the 10-year period of limitations would be applicable, rather than the three. In that event, the husband could claim his personal property exemption at the time of levy, but the plaintiff would not be embarrassed by the shorter period of limitations and the $500 exemption would be the only limiting factor upon its recovery.[11]

Nevertheless, in Michael v. Moore, 157 N.C. 462, 73 S.E. 104, the North Carolina Supreme Court has apparently held, under such circumstances, that the fraudulent donee is entitled to claim the personal property exemption of the fraudulent donor. It was not applied as the District Court applied it here, however, and what was done in Michael v. Moore is not a precedent for the reduction of the judgment.

10. Article 10, § 1.

11. The exemption is of personal property not exceeding $500. If the house and lot

is the husband's under a resulting trust, his interest is realty not personalty.

The plaintiff in Michael v. Moore had a judgment against the fraudulent donor for $348.15. The fraudulent conveyance was of $2,000, which the fraudulent donee had used in the construction of a house. The court reasoned that had there been no fraudulent conveyance, the judgment debtor having retained the $2,000 in his hands, the personal property exemption would have entitled him to keep $500 of it. Though he had not chosen to keep it, the court thought that the creditor should take from the fraudulent donee no more than it could have got from the fraudulent donor if there had been no fraudulent transfer. It thus directed that the fraudulent donee's equity available for the satisfaction of the claim of the judgment creditor should not exceed $1500. Since the judgment creditor's claim was only $348.15, it probably was not embarrassed by the Court's application of the personal property exemption. Clearly, however, the court did not reduce the judgment by the amount of the personal property exemption. Otherwise, the judgment would have been completely wiped out, and the court would have held the judgment creditor entitled to no relief. Since the court in Michael v. Moore granted the judgment creditor all the relief it sought, the case is clearly no authority for what was done here.

If we accept what was done in Michael v. Moore as declarative of the law of North Carolina, Mrs. Waller would be entitled to claim the personal property exemption of her husband, and, apparently, to treat her equity in the real estate as his personalty. The $500 personal property exemption would be subtracted from the value of her equity to the extent that it was attributable to funds supplied by her husband to determine the amount available for the satisfaction of her husband's creditors. Since, because of the Statute of Limitations, the judgment creditor can reach only a part of the fraudulent transfers, however, such an application of the personal property exemption is academic. Mrs. Waller's equity attributable to the funds she obtained from her husband, reduced by $500, far exceeds the aggregate amount of the fraudulent transfers which the plaintiff can attack in this proceeding within the confines of the 3-year statute of limitations.

■ The plaintiff's judgment should not have been reduced by the amount of the constitutional personal property exemption.

## IV

### Interest Paid on the Mortgage Debt

■ The plaintiff contends that its recovery should be measured by the total of all mortgage payments, including their interest increment. The District Court had measured the recovery by the amount by which the principal indebtedness had been reduced with funds derived from the husband, and that we think was clearly proper.

In this kind of proceeding, the fraudulent donee is required to disgorge what she has. Upon the suit of the judgment creditor, she should be required to surrender what she holds to her unjust enrichment and which should have been applied by her donor to the payment of his debt. As a general rule, however, she cannot be required to surrender more than she has, and what she has expended in the payment of interest, real estate taxes and for maintenance and repair of the house, though necessary to her use and enjoyment of the house, has not enhanced the value of the property in her hands. When she used her husband's funds to reduce the principal of the mortgage debt, she enhanced her equity in the house in that exact amount, but her payments of interest to the building and loan association had no such effect.

## V

### Interest on the Plaintiff's Claim

■ The District Judge awarded interest from the date of the filing of the complaint in this action. On appeal, the plaintiff contends that the interest should run from the date of each payment made

by Mrs. Waller to the building and loan association out of funds supplied by her husband. The defendant contends, on the other hand, that no prejudgment interest should have been allowed. We agree with the District Judge.

 These fraudulent transfers, perfectly valid as between the immediate parties, are subject to attack by the creditor. At the instance of the creditor the donee may be compelled to surrender what she has received, but the creditor is under no duty to attack the transaction, and, unless it makes some demand upon the donee, the donee has every right to receive and enjoy the benefit of what she has been given by her donor in fraud of his creditors. By affirmance, the creditors can validate the transactions completely, and, until some demand is made upon the donee, the donee ought not to be responsible for interest.

The filing of the complaint in this action, however, was clearly a formal demand upon the donee. The transfers were plainly in violation of the statute, and the source of the funds which she had used in the construction of her house and the curtailment of her mortgage was known to her and their amount readily ascertainable.

For such reasons, the District Court quite properly awarded prejudgment interest beginning with the date upon which the complaint was filed.

## VI

### Permission to File a Supplemental Complaint

 Finally, the plaintiff complains that it should have been allowed to file a supplemental complaint so as to reach transfers of the husband's funds to the wife to the extent that they were used to reduce the mortgage debt during the period between the filing of the complaint and the hearing. We think such permission should have been granted.

The essential legal and factual questions have been settled in this action. The substantive rights of the plaintiff have been declared and adjudicated. It is clear that, substantively, the defendant is accountable to the plaintiff for all reductions in the principal of the mortgage debt, to the extent that they were effected with funds supplied by her husband, and this is true of payments during the period after the filing of the complaint, as well as of those during the period of three years preceding the filing of the complaint. Unless the plaintiff is allowed to file a supplemental complaint requiring the defendant to account for such payments in this action, it will be necessary for the plaintiff to commence an entirely new proceeding, and since there would then be no independent ground of federal jurisdiction, the new proceeding would have to be brought in another court.

Since all the relief to which the plaintiff is substantively entitled can be awarded in this action, the filing of a supplemental complaint should have been allowed. While the defendant foresees great practical problems arising from the allowance of a supplemental pleading, we see none. The allowance of such a supplemental pleading presents no new substantive controversy. Its allowance would only require that Mrs. Waller prove the source of the funds which were utilized to reduce the mortgage debt during the period covered by the supplemental complaint. Except that some question may arise as to whether or not the supplemental pleading can bring into question transfers occurring more than three years earlier, the original complaint having been filed more than three years ago, we foresee no unusual problem or difficulty arising out of the allowance of the supplemental pleading.

 Rule 15(d) of the Federal Rules of Civil Procedure provides for such a supplemental pleading. It is a useful device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted. So useful they are and of such service in the efficient administration

of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears, though the court has the unquestioned right to impose terms upon their allowance when fairness appears to require them.

We thus conclude the supplemental pleading should have been allowed.

### Conclusion

On most of these several points advanced on appeal, we find ourselves in complete agreement with the District Court. Its reduction of the judgment by the amount of the personal property exemption, we find unwarranted, and we think, upon remand, a motion of the plaintiff to file a supplemental complaint should be granted, so that all relief to which the plaintiff is entitled up to the date of the filing of the supplemental pleading can be awarded. For those purposes, the judgment below, while generally correct, is vacated and the cause remanded for further proceedings not inconsistent with this opinion.

Vacated and remanded.

The late Judge HARRY E. WATKINS expressed his approval of the result of the foregoing opinion, but died before the opinion was prepared.

ALBERT V. BRYAN, Circuit Judge (dissenting in part).

My only disagreement with the opinion of the Court is its failure to allow recovery by the plaintiff of the mortgage interest payments made from the donor's moneys. I do not think it can be said that the satisfaction of the interest obligation failed to enhance the value of the property in the donee's hands. To my mind, it increased her equity as much pro tanto as did the payments on the principal. The interest was as much a mortgage debt and lien as the principal. If the interest had not been paid, its accumulation would have decreased the equity of the donee in the property. In this way satisfaction of the interest increased the equity.