UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

MARCELO BERNARDO AVILES-
RAMOS,

      Petitioner,

v.

MERRICK B. GARLAND, United
States Attorney General,

      Respondent.

FILED
United States Court of Appeals
Tenth Circuit

**November 28, 2023**

Christopher M. Wolpert
Clerk of Court

No. 22-9569
Petition for Review

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

This petition for judicial review involves a noncitizen's application

for asylum based on persecution from a criminal gang. To get asylum, the

noncitizen needed to prove a nexus between his persecution and his

membership in a particularized social group. *Rodas-Orellana v. Holder*,

780 F.3d 982, 996 (10th Cir. 2015); *Dallakoti v. Holder*, 619 F.3d 1264,

1267 (10th Cir. 2010).

---

[*]    This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

For this nexus, the noncitizen alleged persecution based on his ownership of a business and past defiance of the gang. The immigration judge rejected this allegation, reasoning in part that the gang wasn't targeting the noncitizen because he owned a business. The Board of Immigration Appeals dismissed the appeal.

The noncitizen petitions us for review, and we address two issues:

1. Did the Board err by focusing on the gang's motive? We answer *no*. To determine why the gang targeted the noncitizen, the Board acted reasonably in focusing on the gang's motive.

2. Can we grant relief based on the immigration judge's use of an alleged tautology when the noncitizen failed to alert the Board to the tautology? We answer *no*. Because the noncitizen violated a claim-processing rule by failing to raise this issue with the Board, we need not address the merits.

## 1.    Mr. Aviles-Ramos seeks asylum.

The two issues arose from proceedings involving Mr. Marcelo Bernardo Aviles-Ramos, a citizen of El Salvador. El Salvador is plagued with gang violence, and Mr. Aviles-Ramos requested asylum in the United States. He based this request on his ownership of a business and his membership in a social group defined as "Salvadorian business owners who defy criminal organizations." R. at 183, 356–69. The immigration judge found no nexus between membership in this social group and the

threat of persecution, and the Board of Immigration Appeals dismissed an appellate challenge to this finding.[1]

**2.    The Board didn't err in its approach to the nexus inquiry.**

Mr. Aviles-Ramos argues that the Board improperly focused on the gang's motive and failed to correct the immigration judge's use of a tautology.

**A.    Gang's Motive**

In part, Mr. Aviles-Ramos argues that the immigration judge erred by focusing on the gang's motive. The government questions the need to address this argument, alleging noncompliance with our claim-processing rules. Under these rules, we can review Mr. Aviles-Ramos's argument only if he exhausted available administrative remedies when he appealed to the Board. *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–23 (2023).

The government points out that Mr. Aviles-Ramos omitted this argument when appealing to the Board, arguing that this omission creates a claim-processing defect. Despite the government's reliance on a claim-processing defect, Mr. Aviles-Ramos's reply brief omits any discussion of the government's argument. Given this omission, Mr. Aviles-Ramos has

---

[1]    The immigration judge and Board also found that the proposed social group lacked particularization. We need not address that finding because Mr. Aviles-Ramos failed to show a nexus between his proposed social group and the persecution.

waived any non-obvious flaws in the government's argument. *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1099 (10th Cir. 2019).

The government's argument doesn't contain any obvious flaws: Mr. Aviles-Ramos needed to present the same legal theory to the Board, and he failed to mention the alleged error when appealing to the Board. *See Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010); *see also* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right.").

He nonetheless argues that the Board should have caught the immigration judge's error. The Board had no obligation to conduct a sua sponte search for error, so this part of Mr. Aviles-Ramos's argument creates a claim-processing defect. *See Barrados-Zarate v. Barr*, 981 F.3d 603, 605 (7th Cir. 2020) (declining to address an unexhausted challenge because the Board of Immigration Appeals adheres to the same party-presentation rule that the courts of appeals follow).

But Mr. Aviles-Ramos appears to go further, suggesting that the Board itself erred by focusing on the gang's motive. In light of this suggestion, the government contends that Mr. Aviles-Ramos has also failed to exhaust a challenge involving the Board's own error. But Mr. Aviles-Ramos arguably couldn't have learned of the Board's focus on motive before the Board issued its decision. In similar circumstances, some

4

circuits have held that noncitizens don't need to appeal to the Board when they're challenging errors that appeared for the first time in the Board's own decision. *See Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1280 (9th Cir. 2018); *Indrawati v. Att'y Gen.*, 779 F.3d 1284, 1299 (11th Cir. 2015).[2]

We need not decide whether to take this approach here because a challenge involving the Board's own decision would fail on the merits. *See Donnelly v. Controlled Application Rev. & Res. Prog. Unit*, 37 F.4th 44, 56 (2d Cir. 2022) ("[B]ecause mandatory claim-processing rules are not jurisdictional, we may assume that such rules are satisfied to resolve the case on other grounds."); *see also Ponce v. Garland*, 70 F.4th 296, 300–01 (5th Cir. 2023) (rejecting an asylum claim on the merits because the petitioner's failure to exhaust his claim was not a jurisdictional defect).

To assess a nexus between the persecution and membership in a social group, the Board needed to consider the gang's motive. *See Aguilar v. Garland*, 29 F.4th 1208, 1211–12 (10th Cir. 2022); *Orellana-Recinos v. Garland*, 993 F.3d 851, 856, 858 (10th Cir. 2021). For example, a nexus wouldn't exist if Mr. Aviles-Ramos's ownership of a business hadn't

---

[2]    Mr. Aviles-Ramos might have been able to seek reconsideration or reopening. But our claim-processing rules didn't require a motion to reconsider or reopen. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 424–25 (2023).

constituted a central reason for the gang's persecution. *Orellana-Recinos*, 993 F.3d at 856.

Mr. Aviles-Ramos argues that the Board needed to focus on the characteristics of his social group rather than the gang's motive. But he doesn't say how the Board could evaluate the nexus without focusing on the gang's motive. To the contrary, Mr. Aviles-Ramos stresses that the key question was *why* the gang had targeted him. The Board couldn't answer that question without determining the gang's motive for targeting certain groups. *See Hamill v. Md. Cas. Co.*, 209 F.2d 338, 341 (10th Cir. 1954) ("Motive is the reason which leads the mind to desire that result." (quoting *James Stewart & Co. v. Law*, 233 S.W. 2d 558, 561 (Tex. 1950))).[3]

Sidestepping an explanation for the difference between his *why* question and an inquiry involving *motive*, Mr. Aviles-Ramos cites a snippet from *INS v. Elias-Zacarias*, 502 U.S. 478 (1992). There a noncitizen

---

[3]    A leading legal dictionary defines *motive*:

> A reason, interest, or cause to do something. Motive is the purpose, reason, interest, condition, or belief that does or might be a cause for a person or entity to commit some act. In its most general sense, motive is sometimes used as a synonym for purpose, as in a legislature's motive in enacting a statute.

2 Bouvier's Law Dict. 1788 (Sheppard gen. ed.); *see also Webster's Third New Int'l Dict.* 1475 (Gove ed.-in-chief) (stating that the first definition of *motive* is "something within a person (as need, idea, organic state, or emotion) that incites him to action").

sought asylum based on persecution for a political opinion after a guerilla organization had tried to conscript him. *Id.* at 479–80; *see* 8 U.S.C. § 1101(a)(42). The Supreme Court explained that the statute protected the noncitizen's political opinion, not the persecutor's. *Id.* at 482. As a result, the noncitizen needed to show that he had been targeted based on *his* political opinion, not the guerilla organization's. *Id.*

From this discussion, Mr. Aviles-Ramos suggests that the *Elias-Zacarias* Court was disregarding the guerrilla organization's motive. This suggestion reflects a misinterpretation of the opinion. The Court was simply interpreting the statute to require a threat of persecution based on the noncitizen's political opinion (rather than the persecutor's). *Id.* The Court couldn't—and didn't—suggest that the persecutor's motive was unimportant. To the contrary, the Court explained that the persecutor's motive was "critical":

> [The noncitizen] objects that he cannot be expected to provide direct proof of his persecutor's motives. We do not require that. But since the statute makes motive critical, he must provide *some* evidence of it, direct or circumstantial.

*Id.* at 483 (emphasis in original). *Elias-Zacarias* thus shows the critical role of motive in the inquiry on nexus. *See Parsussimova v. Mukasey*, 555 F.3d 734, 739 (9th Cir. 2009);[4] *see also Tamas-Mercea v. Reno*, 222 F.3d

---

[4]    In *Parussimova*, the court explained:

417, 425–26 (7th Cir. 2000) ("The Supreme Court has made clear that the motive of those engaging in oppressive actions is a 'critical' element of the Immigration and Nationality Act." (quoting *Elias-Zacarias*, 502 U.S. at 483)).

In criticizing the agency's focus on motive, Mr. Aviles-Ramos asserts that the immigration judge erred because a group's decision to persecute "a variety of individuals for a variety of different reasons does not function, in fact or law, to automatically transmogrify all the persecutory harm into random human suffering." Petitioner's Opening Br. at 21–22. The agency treats this assertion as a suggestion that the persecutor's motives are irrelevant. Respondent's Br. at 43. If this were Mr. Aviles-Ramos's point, he didn't raise it with the Board, which would prevent consideration. *See* pp. 3–4, above.

---

As the Supreme Court held in *Elias-Zacarias*, the term "on account of" in [8 U.S.C.] § 1101(a)(42)(A) requires an asylum applicant to prove that she was persecuted "*because of*" a protected ground. This necessitates an assessment of the persecutor's motives. Indeed, the [Immigration and Nationality Act] "makes motive critical" and, while it does not require the applicant to provide "direct proof of his persecutors' motives," it does demand "*some* evidence of [motive], direct or circumstantial."

555 F.3d at 739 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992); emphasis in original).

8

But we interpret Mr. Aviles-Ramos's statement differently. His statement suggests that the immigration judge regarded the gang's violence as random.[5] This suggestion is misguided because the immigration judge never characterized the gang's violence as random. To the contrary, the immigration judge found that

- the gang had chosen to persecute Salvadorians for various reasons and

- these reasons hadn't included ownership of a business.

R. at 73.[6] We thus reject Mr. Aviles-Ramos's suggestion that the immigration judge attributed the gang's violence to random criminality.

## B.    Tautology

Mr. Aviles-Ramos also argues that the immigration judge engaged in a tautology, rejecting the existence of a nexus because the group itself wasn't cognizable. Because we review the Board's decision, rather than the immigration judge's, we would ordinarily need to consider whether the

---

[5]    Mr. Aviles-Ramos's brief to the Board also omitted this suggestion, but the respondent doesn't address this suggestion. As a result, the government has arguably forfeited a challenge to this suggestion based on a claim-processing defect. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023). Regardless of a possible forfeiture, however, Mr. Aviles-Ramos's suggestion would fail on the merits. *See* p. 5, above.

[6]    In his reply brief, Mr. Aviles-Ramos appears to agree, acknowledging that the immigration judge found that "Salvadorian criminals target lots of people for all kinds of different reasons." Petitioner's Reply Br. at 14.

Board correctly applied the appropriate standard. *Kabba v. Mukasey*, 530 F.3d 1239, 1245 (10th Cir. 2008).

The Board didn't address this issue because Mr. Aviles-Ramos hadn't raised it with the Board. He had an obligation to present the Board with the same legal theory that he is raising here. *See* p. 4, above. But when Mr. Aviles-Ramos appealed to the Board, he didn't mention the immigration judge's alleged tautology.

The government argues that Mr. Aviles-Ramos didn't appeal this issue to the Board, and he doesn't respond to this argument. That omission results in waiver of any non-obvious flaws in the government's reliance on a claim-processing defect. *See* p. 3–4, above. In our view, the government's argument involving a claim-processing defect doesn't contain any obvious flaws; so we do not reach the merits of Mr. Aviles-Ramos's allegation of a tautology.

\* \* \*

We deny the petition for judicial review because the Board didn't err in rejecting a nexus between the alleged persecution and Mr. Aviles-Ramos's ownership of a business.

Entered for the Court


Robert E. Bacharach
Circuit Judge

10