**Charles S. FOLTZ, et al., Plaintiffs,**

v.

**U.S. NEWS & WORLD REPORT, INC., et al., Defendants.**

**Civ. A. No. 84–0447.**

United States District Court, District of Columbia.

Oct. 4, 1985.

Alan Raywid, John D. Seiver, Susan P. Baxter, Cole, Raywid & Braverman, Washington, D.C., for Foltz, Handleman, Price and Williamson.

Richard J. Leighton, Avis Black, Washington, D.C., for Save the Fund.

Leslie A. Nicholson, Jr., Hannah E.M. Lieberman, Washington, D.C., for U.S. News, Madana Realty.

Lawrence Latto, William Galeota, Julie Melamud, Shea & Gardner, Washington, D.C., for Profit-Sharing Plan.

Richard J. Wertheimer, Hadrian Katz, Edward Wolf, Washington, D.C., for Sweet, Stone, Dunn, and Keker.

**58**

Willis B. Snell, Willard K. Tom, Steuart H. Thomsen, Washington, D.C., for American Appraisal Co.

## MEMORANDUM ORDER

(Plaintiffs' Fifth Amended Complaint)

BARRINGTON D. PARKER, District Judge.

This class action proceeding cannot be labeled as either complex or protracted. At the same time, however, it presents serious and troublesome questions arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), and under federal securities and antitrust laws. Present also are common law claims of negligence, misrepresentation, fraud and breach of fiduciary principles. Recently, a motion has been lodged to add a claim under the federal anti-racketeering statute. These various claims arise from allegations that U.S. News & World Report, Inc. ("U.S. News") and other defendants were responsible for the undervaluation of the corpus of a non-contributory profit-sharing and retirement plan established by U.S. News. The plaintiffs, former employees of U.S. News, claim that the various defendants administered the profit-sharing and retirement plans in such a manner that plaintiffs' rights in the plan were jeopardized and their financial interests diluted.

Counsel for the class plaintiffs have moved for leave to file a Fifth Amended Complaint. The request comes at a time when, save for determining the expected testimony of several expert witnesses regarding their conclusions and the assumptions and methodology employed in arriving at their damage estimates, all discovery has virtually been completed. In addition, the parties have already briefed and, in a few days, will be arguing dispositive motions on the issue of liability.

The motion for leave to file a Fifth Amended Complaint comes within nine months after leave to file a Fourth Amend-

ed Complaint was granted on January 24, 1985. That complaint was intended to clarify earlier allegations in the third, second and original complaints, but it also added other defendants.

Plaintiffs' counsel again suggest that the proposed Fifth Amended Complaint is intended to clarify earlier allegations and to otherwise meet critical comments advanced by the defendants. To that extent, the proposed amended complaint is a modest effort except in one regard. The exception is a significant claim asserted in Count VIII brought under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). The RICO count is brought against U.S. News, the director-defendants, and American Appraisal Associates.

 Aside from Count VIII, the plaintiffs' motion seeks to add five new defendants charging them with violations of fiduciary duties imposed by ERISA; a newly asserted ERISA claim connected with the Stock Bonus Plan as distinct from the Profit-Sharing Plan; a claim of unjust enrichment pursuant to a quasi-contractual theory against U.S. News; a claim of constructive fraud against U.S. News, the directors, and American Appraisal; claims for negligence and securities laws violations [1] against American Appraisal; and finally, a demand for punitive damages from all defendants.

The plaintiffs contend, and the Court agrees, that they are justified in proposing the latter group of amendments. The newly asserted ERISA claims should come as no surprise to the former or even to the several newly-named defendants. Similarly, the securities claim against American Appraisal could have been expected, given that the Fourth Amended Complaint, while not a model of clarity, alleged that American Appraisal acted "in concert with" the other defendants.

---

**1.** Count I of the new complaint adds an aiding and abetting charge against American Appraisal

to the other securities claims.

■ However, the Court decides that the same conclusion cannot be reached as to the proposed RICO claim. In an attempt to justify this belated effort to amend, plaintiffs' counsel assert that they had for some time considered bringing such a cause of action, but held off because of conflicting precedents among the circuits, which uncertainty was only recently cleared when the Supreme Court published its July 1, 1985 opinion in *Sedima S.P.R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Only following that decision were counsel convinced that a RICO count would pass muster. Closer scrutiny will reveal, however, that plaintiffs' hesitancy was unnecessary and, in any event, does not excuse their untimely amendment.

### A.

*Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), sets out standards governing the amendment and supplementing of pleadings under Rule 15, Fed.R. of Civ.P. In reversing the district and circuit courts, Justice Goldberg, writing for the Court, noted that

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that

discretion and inconsistent with the spirit of the Federal Rules.

371 U.S. at 182, 83 S.Ct. at 230. In clear recognition of those guidelines, this Court determines that there are compelling reasons why Count VIII of the Fifth Amended Complaint should be denied. As noted, plaintiffs' counsel allege that they previously contemplated such a claim but held off because of a conflict among the circuits as to the circumstances under which a RICO claim could be advanced. In this connection, defendants' counsel point out, and the Court agrees, that such cautious consideration in no way lessened their reliance upon and enthusiasm for advancing a claim under the antitrust laws, a claim whose vitality they now concede has been dissipated by the Third Circuit's August 1, 1985 opinion in *Kalmanovitz v. G. Heileman Brewing Co.,* 769 F.2d 152. In advancing their antitrust claim, plaintiffs relied upon one district court opinion, while rejecting a body of case authority holding invalid the type of antitrust claim advanced by plaintiffs in this proceeding. Although 60 days have elapsed since *Kalmanovitz,* plaintiffs have yet to file a praecipe withdrawing that claim.

The original complaint in this proceeding was filed in early February, 1984. At that time, plaintiffs could have drawn encouragement from rulings in at least three circuits—the 5th, 6th and 7th—and several district courts[2] that a civil RICO action could be supported in the absence of a prior criminal conviction or a showing of injury resulting from racketeering. To the contrary were the opinions from only two circuits requiring that the injury be related to racketeering and that the acts complained of be the subjects of prior criminal convictions. In other words, at the time they filed their complaint, plaintiffs could have found comfort in authorities that rested on

---

**2.** *See, e.g., Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 747 F.2d 384 (7th Cir. 1984), *aff'd,* —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Alcorn County v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160, 1169 (5th Cir.1984); *Bunker Ramo Corp. v. United Business Forms,* 713 F.2d 1272, 1286–87 (7th Cir.

1983); *USACO Coal Co. v. Carbomin Energy Inc.,* 689 F.2d 94 (6th Cir.1982); *U.S. v. Cappetto,* 502 F.2d 1351 (7th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975); *Mauriber v. Shearson/American Express Inc.,* 546 F.Supp. 391, 396 (S.D.N.Y.1982).

stronger foundations than those supporting their decision to bring an antitrust claim. Under the circumstances, plaintiffs' explanation for their reluctance to file a RICO action simply does not withstand closer analysis.

A further, and more intractable problem, is that posed by discovery. Plaintiffs urge that the underlying facts necessary to support their RICO claim have long since been established in the record and that additional discovery is unnecessary.

Specifically, to make out a claim under RICO, plaintiffs must show that defendants have engaged in a pattern of racketeering activity. While the mail, wire, and securities fraud alleged in paragraphs 121 and 122 of the proposed complaint constitute proscribed acts upon which a violation of the statute may be predicated, plaintiffs do not allege, nor could they, that the conduct lying at the base of their other claims is sufficient by itself to give rise to a RICO action.[3] Rather, plaintiffs assert that defendants "acquired or maintained" an "interest in or control of" the profit-sharing and stock bonus plans of U.S. News, and managed the two plans, through a pattern of racketeering activity. Such allegations are indeed essential to the survival of a RICO claim, for the predicate acts by themselves do not support a finding of liability. Instead, an accused must have conducted the affairs of (or have acquired an interest in) an enterprise *through* a *pattern* of racketeering activity. *See Sedima,* ——— U.S. ———, 105 S.Ct. at 3285. Moreover, a pattern does not arise simply from two or more isolated instances of the predicate acts, but "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* 105 S.Ct. at 3285 n. 14.

For plaintiffs to support, and for defendants to meet, these allegations, additional

discovery would be required, at this late stage in the proceedings. A look at what additional discovery American Appraisal has already requested with regard to the RICO count is instructive. Reduced to its barest bones, that defendant's discovery request seeks information as to what plaintiffs contend was its role in assisting U.S. News and the director-defendants in acquiring an interest in, or control of, the Plans or in conducting the Plans' affairs through a pattern of racketeering activity, and what facts plaintiffs allege to support their allegations that American Appraisal itself engaged in such a pattern of conduct. U.S. News and the director-defendants have filed a similar discovery request. Defendants further state that in addition to ascertaining further details of the underlying facts, there is also the possibility that further examination of the plaintiffs' expert witnesses might be required. Inasmuch as the facts sought to be discovered are new to the case, the delay entailed in their production would work to the prejudice of defendants. The presence of such prejudice argues, under *Foman,* against granting plaintiffs leave to amend.

**B.**

Defendants have filed, with their opposition to the plaintiffs' latest effort to amend, an order entered by Judge Barbara J. Rothstein of the Western District of Washington (*Lewis, et al. v. Barry, et al.,* August 15, 1985, No. C83–771R). In that proceeding, the class plaintiffs' request to file a second amended complaint to accomplish certain "housekeeping" changes and to add a RICO claim was denied. The Court reasoned that it would require new discovery, additional dispositive motions, and thus a postponement of trial. Those plaintiffs also relied upon *Sedima* and advanced arguments strikingly similar to those relied upon by the *Foltz* plaintiffs. Judge Rothstein found that to allow the RICO claim at that point would be extreme-

---

**3.** Plaintiffs allege, in this connection, that the allegedly erroneous appraisals, the issuance of the phantom stock, and the inducements to U.S. News' employees to liquidate their stock hold-

ings constitute predicate acts under RICO. Were that all they alleged, this Court would agree that the proposed RICO county looks to the same set of facts as plaintiffs' other claims.

ly prejudicial to the defendants and that the plaintiffs' arguments were unconvincing. No persuasive grounds have been advanced to suggest dissimilar treatment in the present case.

This proceeding has been ongoing for more than 20 months. Over that period, two trial dates have been set and later vacated. This delay has been caused in large part by the filing of amended complaints, assertion of new claims, and the defendants' need for additional discovery. Under ordinary circumstances, this case would proceed to trial soon after a ruling on the dispositive motions. Apart from that ruling, there remains only one significant step—the pretrial proceedings. The Court's experience in this proceeding indicates that the allowance of the RICO claim would of necessity cause further delay before the pretrial proceedings and trial of this matter. While counsel are prone to exaggerate the scope and the amount of time needed for discovery, and while the Court could set firm limits on further discovery, to foreclose any discovery on additional claims would be unrealistic and, indeed, unfair to defendants.

After a full consideration of the plaintiffs' motion to file a Fifth Amended Complaint, and for the reasons set out above, it is this 4th day of October, 1985,

### ORDERED

That the motion is denied as to any count or claim involving the Racketeer Influenced and Corrupt Organizations Act of 1970.

That the motion is granted in all other respects.