**Scott ARMSTRONG, et al., Plaintiffs,**

**v.**

**George BUSH, et al., Defendants.**

**Civ. A. No. 89–142 (CRR).**

United States District Court, District of Columbia.

Nov. 20, 1992.

Order Nov. 24, 1992.

See also, 139 F.R.D. 547.

Michael E. Tankersley, Public Citizen Litigation Group, with Alan B. Morrison, Public Citizen Litigation Group, Washington, DC, were on the briefs, for plaintiffs.

Jason R. Baron, Attorney, U.S. Dept. of Justice, Civ. Div., Washington, DC, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., District of Columbia, David J. Anderson, Elizabeth A. Pugh, Peter D. Coffman, and Stephen G. Harvey, Attorneys, U.S. Dept. of Justice,

Civ. Div., Washington, DC, were on the briefs, for defendants.

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION

Before the Court are the Plaintiffs' motion to amend the complaint and motion for a Temporary Restraining Order. In their motions, the Plaintiffs request they be allowed to amend their pleadings to include additional information learned during discovery regarding the Defendants' electronic communication systems and that the Defendants be required to save material on these electronic communication systems until after the merits of the case have been decided.

On November 18, 1992, the Court held a hearing regarding the Plaintiffs' motions. After considering the Plaintiffs' motions and replies, the Defendants' responses, the Defendants' surreply, the arguments of counsel for the parties, and the applicable law, the Court will grant both of the Plaintiffs' motions.

## II. BACKGROUND

Plaintiffs are suing for declaratory and injunctive relief under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101–2118, 2901–2910, 3101–3107, and 3301–3324, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.* The Plaintiffs seek to prohibit the Defendants—including the President, the Executive Office of the President ("EOP"), the Archivist and the National Security Council ("NSC")—from erasing any material stored on the "PROFS" electronic communication system due to the Defendants failure to comply with the FRA. The Plaintiffs also request immedi-

ate access under FOIA to PROFS agency records saved from the last two weeks of the Reagan Administration.[1]

## III. PLAINTIFFS' MOTION TO FILE A THIRD AMENDED COMPLAINT

■ Pursuant to Federal Rule of Civil Procedure 15(a) and 15(d), the Plaintiffs have moved to amend their complaint for a third time to include new information learned recently in discovery about the type of automated systems used by the Bush Administration.[2]

The Defendants object to the proposed amended complaint on three grounds. First, they argue that the Plaintiffs are impermissibly broadening the scope of this case by including electronic communication systems, other than PROFS, previously never involved in the suit, including the "OASIS," "Office Vision," "All–in–One," or "A–1" systems. Second, the Defendants contend that Plaintiffs are expanding the scope of their FOIA claim to include all information currently on the Defendants' electronic communications systems, even though the Plaintiffs' prior request specified the PROFS backup tapes of the Reagan Administration only. Finally, the Defendants contend this amendment is not appropriate as discovery has been closed in this case for over six months and the parties briefed all the pending issues in summary judgment motions before the Court four months ago.

■ The Court is unpersuaded by the Defendants' objections to the Plaintiffs' proposed amendment because 15(a) of the Federal Rule of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." This Rule has been liberally construed to allow amendment in the absence of undue delay or undue prejudice to the opposing

---

**1.** Plaintiffs' complaint also contests certain general schedules promulgated by the Archivist, which authorize the disposal of certain electronic records after a specified period of time. However, this cause of action is no longer at issue, *see* Plaintiffs' Memorandum in Support of Motion at 15, and the Plaintiffs have dropped this count in their proposed amended complaint.

**2.** In addition, the Plaintiffs' proposed amendment drops a cause of action regarding the use of General Records Schedules that is not opposed by the Defendants and, therefore, need not be discussed.

party and there is none here. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see Anderson v. USAir, Inc.*, 818 F.2d 49, 57 (D.C.Cir.1987).

The amending of the Plaintiffs' complaint here simply updates the type of automated system introduced by the Defendants to replace or supplement the PROFS system used during the Reagan Administration. The Defendants do not contest that all of these systems are subject to the same record keeping requirements. This amendment is appropriate as the Defendants have altered their electronic communications systems and their record keeping procedures during the course of this litigation.[3] The amended complaint does not add a new cause of action or legal theory, *see Mir v. Fosburg*, 646 F.2d 342 (9th Cir.1980) or represent surprise to the Defendants as this information was the subject of the Plaintiffs' discovery. *See Foltz v. U.S. News & World Report, Inc.*, 108 F.R.D. 57, 58 (D.D.C.1985); *WIXT Telephone, Inc. v. Meredith Corp.*, 506 F.Supp. 1003 (N.D.N.Y.1980). Finally, as information on these other systems has already been the subject of discovery, there will be no undue delay in this case resulting from amendment to the complaint.[4] *See Foltz*, 108 F.R.D. at 58.

Similarly, the Court finds that the Plaintiffs' proposed amended FOIA claim is within the jurisdiction of the Court. The Defendants do not contest that the Plaintiffs have requested from the proper parties all the information included in its proposed amended FOIA count. Rather, the Defendants contend this request is contrary to a February 1992 agreement that the only pending FOIA claim in this case was the PROFS records of the Reagan Administration. However, the Court finds that any prior agreement regarding the scope of a lawsuit does not prevent a party from seeking amendment under Rule 15 of the Federal Rules of Civil Procedure.

■ Defendants also contend that the Plaintiffs have not exhausted their administrative remedies under FOIA. But it is well established that administrative exhaustion is not required where it would be "futile because of certainty of an adverse decision." *See James v. U.S. Dept. of Health and Human Serv.*, 824 F.2d 1132, 1138 (D.C.Cir.1987) *citing Randolph–Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 105–107 (D.C.Cir.1986). Given that the Defendants continue to maintain their position that these electronic materials are not records within the FRA and FOIA and claim that the Plaintiffs are not entitled to them in any event and because they have not given the Plaintiffs any of the information sought in this suit, the Court believes administrative exhaustion would be futile.

■ Third, the Defendants contend that the Plaintiffs' more recent FOIA claims should not be given priority before other FOIA requests filed earlier in time and thus should not be included in this suit. *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir. 1976). However, the court in *Open America* explained that certain FOIA claims could be given priority if "some exceptional need or urgency attached to the request justified putting it ahead of all other requests received by the same agency prior thereto." *Id.* at 615. Given the pendency of this lawsuit and the fear that these electronic records will be lost before the end of the Bush Administration, the Court finds that exceptional circumstances have been shown. It will also maintain public confidence in the integrity of our system of government and how it functions if valuable records are not allowed to be destroyed without right which a decision on the merits herein will ultimately resolve.

Finally, allowing an amended complaint here will enable the Court to award the

---

3. OASIS was introduced in the EOP as a substitute for PROFS in 1989, while A–1 operates in conjunction with PROFS at the NSC. Office Vision is simply another marketing name for PROFS and is not a separate system, per se.

4. At the hearing, the Plaintiffs stated that, if the third amended complaint was permitted, they would not need additional time for discovery or to supplement the pending dispositive motions before the Court.

most complete relief in one action and avoid waste, delay and cost of a separate action.[5] *See New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20 (4th Cir.1963), *cert. denied,* 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964).

## IV. PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

 The Plaintiffs contend the information they are requesting will be lost as part of the transition process at the close of the Bush Administration. At the start of this case in January 1989, the Plaintiffs requested, and received, a Temporary Restraining Order from Judge Parker of this Court to prevent the destruction of the PROFS backup tapes as part of the transition process at the end of the Reagan Administration. The Plaintiffs argue that the situation now is analogous and the Court agrees. The Plaintiffs' motion alleges that the Bush Administration does not have appropriate or adequate guidelines for its staff to identify what records must be saved under the FRA and because of this, there is no way to know what records might be destroyed at the end of the Bush Administration. Therefore, if records are erased at the end of the Bush Administration, the public's right to access the subject records will be irreparably lost and harmed.

 The granting of a equitable relief is committed to the sound discretion of the Court on the basis of the following factors: 1) whether there is the threat of imminent irreparable injury; 2) whether the balance of the hardship favors equitable relief; 3) whether the Plaintiffs may possibly succeed on the merits; 4) whether equitable relief is in the public interest. *See Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir.1989), *Washington*

*Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977); *Housing Study Group v. Kemp,* 732 F.Supp. 180 (D.D.C.1990).

1. Plaintiffs motion for a Temporary Restraining Order will be granted because the harm complained of is immediate and irreparable.

The Defendants contend that there are no changes in circumstance to merit a Temporary Restraining Order at this time because the Bush Administration will continue to write over and erase various electronic records created over approximately the last 4 years. But if destroyed, the harm justifying this Temporary Restraining Order is immediate and irreparable and not speculative.

The Plaintiffs maintain that the immediacy requirement is satisfied by virtue of the recent presidential election. They assert that the change in administration will cause a large number of the staff to leave, thus causing a purge of the staff's individual electronic files, and that the end of the Administration may very well result in the loss of all records with resulting damage and irreparable loss.

The Court believes the situation here is substantially similar to the prior Temporary Restraining Order granted by Judge Parker at the end of the Reagan Administration.[6] While the Defendants contend they are not currently planning any wholesale purge of their electronic records, they are unwilling to guarantee that such a purge will not take place. In fact, history is full of instances where the outgoing President has decided to erase, burn or destroy all or substantially all Presidential or Executive Office of the President rec-

---

5. In fact, if the Court did not permit amendment under these circumstances, the Plaintiffs would likely file another action as to these claims which they could file as related to the one presently before the Court. The Defendants do not and can not dispute this.

6. The Defendants' argument that there is no immediacy is particularly hollow in light of the

history of this case. The Plaintiffs' TRO against the Reagan Administration was filed on January 19, 1988, the last day of the Administration. Defendants at the time complained that the Plaintiffs did not request the saving of these records until the last minute. *See* Transcript of Hearing on Motion for Temporary Restraining Order at 13–14 (January 19, 1989).

ords before the end of his term. *See Nixon v. United States*, 978 F.2d 1269, 1277–1280 (D.C.Cir.1992). Under these circumstances and mindful that the most compelling reason to grant injunctive relief is to prevent the judicial process from being rendered futile by a party's act or refusal to act, the Court finds that the Plaintiffs have made a showing of immediate and irreparable harm. *See 6 Wright & Miller*, § 2947 at 154 (1992 pocket part).

2. Plaintiffs' motion will be granted because the balancing of the hardships favors granting the Temporary Restraining Order.

Notwithstanding the claims of Jeffrey Mass, the Deputy Director of Systems for White House Situation Support Staff on file herein, *see* Defendants' Memorandum in Opposition to Plaintiffs' Motion for a Temporary Restraining Order, Exhibit A, this Court is convinced that its Order entered on this date will preserve the status quo and will not be disruptive or overly burdensome upon the Defendants.[7] Moreover, preserving the records in this case on backup tapes, which is done regularly in any event, will present no undue burden to the executive branch of government. Meanwhile, as Judge Parker said in 1989, "[t]he world is not going to cave in if I grant a temporary restraining order." Transcript of January 19, 1989 Hearing for Temporary Restraining Order at 30.

While the government contends in this case that backup tapes do not constitute records within the meaning of the statutes at issue here, it does seem only proper that this issue will have to be resolved on the merits of this case.[8]

3. Plaintiffs' motion will be granted because the Plaintiffs have demonstrated a possibility of success on the merits and the public interest favors granting the Temporary Restraining Order.

The Defendants protest that the Plaintiffs are unlikely to succeed on the merits and thus can not be granted a Temporary Restraining Order. The Court does not agree. The Plaintiffs persuasively argue that there are no written guidelines that tell the Defendants' staff what record material to preserve and what is or is not a presidential or federal record is a matter for each employee to decide and designate on his or her computer. In addition, even though the government maintains that E-mail systems are not records, the Court observes that this may be in error.[9] *See* 44 U.S.C. § 3301 (definition of record includes "machine readable materials, or other documentary materials, regardless of physical form or characteristics").

Similarly, the Plaintiffs have the better of the argument when examining where the public interest lies. The FRA was designed to preserve records for historical purposes and the Plaintiffs are within the FRA zone of interest. By enacting the statute, Congress has made a determination that the preservation of records is in the public interest. *See Armstrong v. Bush*, 924 F.2d 282 (D.C.Cir.1991). Therefore, the Court is satisfied that the public interest will be served by maintaining the status quo through the issuance of a Temporary Restraining Order.

7. The Defendants argued that the amount of tapes that would have to be saved and the personnel required would be burdensome to the government. The Court is unpersuaded by this argument because the Defendants routinely make backup tapes of all these electronic systems. All the relief that is required here is that the Defendants save these tapes instead of reusing (and thereby erasing) them.

8. The Defendants' objection to the limited relief granted by the Court today has been waived as the Defendants did not protest the use of backup tapes to store the Reagan Administration PROFS records in 1989.

9. The Defendants' argument that information stored on backup tapes is not subject to FOIA ignores that the Temporary Restraining Order can be granted simply on the basis of the Plaintiffs' FRA claim concerning the lack of adequate record keeping procedure or guidelines. Therefore, whether these backup tapes are subject to FOIA need not be decided at this time.

4. The relief requested, the saving of the electronic records, is an appropriate remedy here because it maintains the status quo until the Court can decide the case on the merits and because it is not overbroad.

The Defendants say that even if the Plaintiffs wins the suit, they are not entitled to this remedy, and thus the Temporary Restraining Order is improper. The Defendants contend the only relief available if the Plaintiffs win on the merits is a remand to the Defendants for new record keeping procedures, not the saving of documents. This is wrong as our Court of Appeals in this case allowed the Plaintiffs to sue to require the agency head and Archivist to fulfill their statutory duty under the FRA. *Id.* at 287–88. This suit would be futile if the records the Plaintiffs seek are destroyed.

In *American Friends Service Committee v. Webster*, 720 F.2d 29 (D.C.Cir.1983), our Circuit Court held that a private party can sue under the APA to challenge the adequacy of an agency's records disposal schedules and system where the private plaintiffs are complaining that the agency administrators and the Attorney General have breached a duty to enforce the FRA. In that case, the court said that where the FBI had disposition schedules that where improper under the FRA, the appropriate relief was a preliminary injunction prohibiting the FBI from destroying the records until it complied with the statute. The Defendants attempt to distinguish *American Friends*, arguing there is no disposal schedule at issue here, is not persuasive because the Plaintiffs allege, and the Defendants do not contest, that the records at issue in this case are being and will continue to be destroyed. Thus, the relief requested in the Temporary Restraining Order is proper under *American Friends Service Committee v. Webster* and the Circuit Court's remand in this case.

The Defendants also argue that granting the Temporary Restraining Order will interfere with presidential records because it does not distinguish between presidential records not subject to this suit and federal records that are.[10] The Defendants contend that this Temporary Restraining Order will ran afoul of our Circuit Court's holding that there is no judicial review of the President's compliance with the Presidential Records Act (PRA). *See Armstrong v. Bush*, 924 F.2d at 290–91. This Court, while aware of our Circuit Court's holding as to the PRA, does not agree with Defendants' contention. The Circuit was well aware that:

> there is little practical difference between an agency official decision to delete, and thus destroy, a PROFS note because he believes it is not a "record" for purposes of the FRA and his decision to delete a PROFS note that he believes is a "record" without first obtaining the permission of the Archivist.

*Id.* at 288.

This rationale is applicable to this case. The Court today shall not address finally "the adequacy of the President's records management practices or overrule his records creation, management, and disposal decisions." *Armstrong v. Bush*, 924 F.2d at 290. However, until the Court rules on the merits of the parties' summary judgment motions, it is impossible to know if the Defendants record keeping procedures are arbitrary and capricious. That being the case, it does not make any sense to allow the Defendants, whose record keeping is the subject of this suit, to decide what materials are presidential records, federal records or non-records. Furthermore, the Defendants have not provided the Court with any method of determining, at this juncture, which of the materials produced by these systems are subject only

---

**10.** Our Circuit Court noted that components of the EOP whose sole responsibility is to advise the President are subject to the PRA and create "presidential records." These records are under the complete control of the President. The Circuit noted that the components of the EOP that have statutory responsibility are subject to the FRA and create "federal records." "Because the NSC advises the President and has statutory obligations, it creates both presidential and federal records." *Armstrong v. Bush*, 924 F.2d 282, 286 n. 2 (D.C.Cir.1991).

to the PRA.[11] Therefore, the Court concludes that our Circuit Court's decision in this case does not deprive this Court of jurisdiction to issue a Temporary Restraining Order where the parties dispute the adequacy of the government's record keeping procedure and disagree whether records are covered by the PRA.

As it is impossible to know what materials are presidential or federal, it is proper to order the information on these electronic systems be saved until the Court examines these issues further or decides the case on the merits.

5. A limited amount of security is required under Rule 65(c).

■ Pursuant to Federal Rule of Civil Procedure 65(c), the Plaintiffs shall only be required to post $100 security because the public interest favors granting the Temporary Restraining Order under these circumstances. *See Natural Resources Defense Council v. Morton*, 337 F.Supp. 167 (D.D.C.1971), *aff'd on other grounds*, 458 F.2d 827 (D.C.Cir.1972).

## V. CONCLUSION

Because the Court is enormously busy with its criminal and complex civil cases at this time and while it is satisfied that the temporary relief requested by the Plaintiffs here is appropriate and proper, the Court still needs further argument and the opportunity to have counsel discuss and argue the merits of the competing claims here. Accordingly, for the reasons set forth herein, the Temporary Restraining Order issued today preserves the status quo for a limited time so as to gave the Court and the parties a better opportunity to thoroughly consider the contentions of the parties and further aspects of the merits of the case.

The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.

## ORDER

Upon consideration of the Plaintiffs' motion for a Temporary Restraining Order, Defendants' Opposition thereto, the Plaintiffs' Reply, the applicable law, the oral arguments of counsel, and for the reasons articulated in this Court's Opinion of even date herewith, it is, by the Court, this 20th day of November, 1992,

ORDERED that Plaintiffs' Motion to Amend the complaint is GRANTED; and it is further

ORDERED that Plaintiffs' request for a Temporary Restraining Order be and hereby is GRANTED; and it is further

ORDERED that the Defendants, including the President, his agents, servants, and employees, are hereby directed and ordered from this day forward to preserve all the current and existing computer backup tapes in their custody as of the date of this order or hereafter created from the electronic communications systems known as "PROFS" or "Office Vision," "OASIS," and "All-in-One" or "A-1,"; and it is further

ORDERED that the Defendants are not to write-over, erase, or destroy any of the information on the aforementioned tapes; and it is further

ORDERED that this Order shall be effective immediately upon payment by the Plaintiffs of cash or a surety bond that meets the satisfaction of the Clerk of the Court in the amount of $100 pursuant to Federal Rule of Civil Procedure 65(c). *See Natural Resources Defense Council v. Morton*, 337 F.Supp. 167 (D.D.C.1971), *aff'd on other grounds*, 458 F.2d 827 (D.C.Cir.1972).

ORDERED that this Order shall expire ten (10) days after entry hereof unless the Court is shown good cause to modify or extend it for an additional ten (10) days; and it is further

ORDERED that the parties are directed to advise the Court, in writing, by 10 a.m. on November 23, 1992 as to the most feasible means, consistent with the ends of jus-

---

11. The Court is also mindful that the Temporary Restraining Order granted in 1989 to preserve Reagan Administration records was similarly broad in scope.

tice, of disposing of this entire matter on the merits at the earliest practical date.

## ORDER

Upon further consideration of the Plaintiffs' motion for a Temporary Restraining Order, the Defendants' Opposition thereto, the Plaintiffs' Reply, the oral arguments of counsel, the Defendants' and the Plaintiffs' statements in response to this Court's Order of November 20th, the applicable law, it is, by the Court, this 23rd day of November, 1992,

ORDERED that this Court's Temporary Restraining Order of November 20, 1992 is modified as follows:

ORDERED that pursuant to Rule 25 of the Federal Rules of Civil Procedure and the Plaintiffs' third amended complaint, the name of the President George Bush shall be stricken from the caption of this case and the Defendants hereafter shall be: the Executive Office of the President, the Office of Administration, the National Security Council, the White House Communications Agency, and the Archivist of the United States; it is further

ORDERED that the Order of the Court of November 20, 1992, shall not require the Defendants to save "Presidential Records" produced by the White House Office, the Office of Policy Development, the Council of Economic Advisors and other components of the Executive Office of the President whose sole responsibility is to advise the President; and it is further

ORDERED that all other terms and conditions of the Court's Order of November 20, 1992, shall remain in full force and effect.