**WEST ALABAMA WOMEN'S CENTER and William J. Parker, M.D., on behalf of themselves and their patients, Plaintiffs,**

v.

**Thomas M. MILLER, M.D., in his official capacity as State Health Officer, Defendant.**

**CIVIL ACTION NO. 2:15cv497-MHT**

United States District Court, M.D. Alabama, Northern Division.

Signed July 5, 2016

Alexa Kolbi-Molinas, Andrew David Beck, Jennifer Lee, American Civil Liberties Union, New York, NY, Randall C. Marshall, Aclu of Alabama Foundation, Inc., Montgomery, AL, for Plaintiffs.

Bethany Lynn Bolger, Carol Robin Gerard, Phillip Brian Hale, Alabama Department of Public Health, Montgomery, AL, for Defendant.

### OPINION AND ORDER

Myron H. Thompson, UNITED STATES DISTRICT JUDGE

Plaintiffs West Alabama Women's Center, a Tuscaloosa clinic that provides abortions and other reproductive-health services, and William J. Parker, M.D., the clinic's physician, filed this as-applied Fourteenth Amendment challenge to an abortion regulation with which they could not comply and which had forced the clinic to close. The defendant is the State Health Officer for the Alabama Department of Public Health. The court entered an order temporarily restraining enforcement of the regulation, and then stayed this action at the request of the parties so as to give the Department an opportunity to modify the regulation.

This litigation is currently before the court on West Alabama and Parker's motion to lift the stay and for leave to supplement their complaint. They seek to continue their challenge to the Health Department's regulation, albeit as newly amended, and to add challenges to two recently enacted statutes that primarily impact West Alabama and one other abortion clinic in the State. Based on the representations made by the parties in briefs and at oral argument, the court concludes that West Alabama and Parker's motion should be granted.

### I. BACKGROUND

In late 2014, West Alabama's sole, long-serving physician retired. The clinic found a new physician, Parker, who agreed to replace the retiring physician. However, West Alabama and Parker were unable to comply with an Alabama Department of Health regulation applicable to abortion clinics and physicians. That regulation, Alabama Administrative Code § 420-5-1-.03(6)(b), provided that every abortion provider must maintain staff privileges at a local hospital or, alternatively, that any facility at which a physician without admitting privileges provides abortions must maintain a contract with a covering physician who has such privileges.[1] While West Alabama's retiring physician had held staff privileges at a local hospital, Parker was not able to obtain staff privileges or secure a contract with a covering physician for the clinic. As a result, in January 2015, the clinic closed.

On July 10, 2015, West Alabama and Parker filed this as-applied constitutional chal-

---

1. Enforcement of an Alabama statute requiring that all physicians providing abortions have admitting privileges was enjoined by this court in a separate lawsuit, Planned Parenthood Se., Inc. v. Strange (Strange III), 33 F.Supp.3d 1330, 1378 (M.D.Ala.2014) (Thompson, J.) (finding that 1975 Ala. Code § 26-23E-4(c) creates an undue burden, at least as to the plaintiff clinics). See also Planned Parenthood Se., Inc. v. Strange (Strange V), 172 F.Supp.3d 1275, 2016 WL 1167725 (M.D.Ala. March 25, 2016) (Thompson, J.) (declaring the admitting-privileges requirement facially unconstitutional). At the time this West Alabama litigation commenced, the regulation had been amended in light of the statute and in the wake of the Strange litigation; it still allowed for compliance in either of two ways. As this court previously explained in August of last year,

"the regulation now states that the statutory requirement that all physicians obtain staff privileges is 'stayed until such time that the restraining order is lifted or there has been a final disposition allowing for enforcement of this requirement in Planned Parenthood Southeast, et al. v. Strange, et al.,' Civil Action No. 2:13–cv–504–MHT,' and that, 'until that time,' clinics may comply with the regulation by contracting with a covering physician. Although the revised language of the regulation is a bit abstruse, it appears that both sides in this litigation agree that the current regulation retains the same two alternative routes for compliance: staff privileges for the doctor or a covering-physician contract for the clinic." W. Ala. Women's Ctr. v. Williamson, 120 F.Supp.3d 1296, 1301 n. 2 (M.D.Ala.2015) (Thompson, J.).

lenge to the regulation. In early August 2015, after the parties had submitted substantial evidence and briefed and orally argued the complex legal and factual issues, and because the clinic was then set to lay off staff and shut down permanently, the court temporarily enjoined enforcement of the regulation until August 18 and promised that an opinion would follow. W. Ala. Women's Ctr. v. Williamson, No. 15cv497, 2015 WL 4932810, at *1 (M.D.Ala. Aug. 4, 2015) (Thompson, J.). In mid-August, the court issued an 81-page opinion setting forth in detail the legal and factual basis for the injunction. W. Ala. Women's Ctr. v. Williamson, 120 F.Supp.3d 1296 (M.D.Ala.2015) (Thompson, J.). The clinic reopened shortly thereafter.

In late August, after the injunction had been extended by agreement of the parties, the court approved a stipulation they had submitted. The stipulation provided that, for one year, while the Health Department sought to modify the regulation, this litigation would be stayed and enforcement of the regulation would be waived as to West Alabama.[2] W. Ala. Women's Ctr. v. Williamson, No. 15cv497, 2015 WL 5164054, at *2 (M.D.Ala. Aug. 31, 2015) (Thompson, J.).

In June 2016, West Alabama and Parker filed the pending motion to lift the stay and for leave to supplement their complaint as follows: to continue their challenge to the abortion regulation, albeit as amended since the stay was entered, and to add challenges to two recently enacted Alabama statutes that primarily impact West Alabama and one other abortion clinic.

During the stay, the regulation was amended to add an additional alternative for compliance: any abortion clinic that is unable to comply with the staff-privileges or covering-physician requirements may remain in compliance by, among other measures not at issue, ensuring that every woman who receives an abortion at the facility "receive[s] a copy of her medical record that pertains to the current abortion procedure prior to leaving the facility." Ala. Admin. Code § 420-5-1-.03(6)(c)(4).

In their proposed supplemental complaint challenging the amended regulation, West Alabama and Parker allege that: "A patient's medical records from [West Alabama] contain her most personal and sensitive information. In addition to details of the abortion procedure itself, this information includes but is not limited to ... the patient's medical and surgical history, including her HIV status, history of sexually transmitted infections, mental health history, and her pregnancy history, including number of children, miscarriages, and prior abortions; notes from the patient's pre-abortion counseling session about her reasons for seeking the abortion; and the name and signature of the person who will drive her home from the clinic." Proposed Suppl. Compl. (doc. no. 32-1) at 16. They further allege that: "The medical records requirement jeopardizes the privacy of [West Alabama]'s patients by increasing the likelihood that highly sensitive information, including the patient's decision to have an abortion, will be exposed to third parties." Id. at 19. And they continue that: "Forcing a woman who has just had an abortion to receive a copy of her medical record reflecting her entire sexual and medical history and the care she received at [West Alabama] makes it substantially more likely that an abusive partner (or relative) will learn that information. For victims of abuse, this could jeopardize their wellbeing, safety, or even their lives." Id. at 20. The Health Department adopted the amended regulation despite the fact that, according to the proposed supplemental complaint, the department had, during the comments period, "received multiple comments opposing the medical records requirement on the basis that it would pose an unacceptable threat to patient confidentiality and singled out abortion providers for a requirement not imposed on any other healthcare providers." Id. at 11.

Since the stay was entered, the State Legislature enacted and the Governor signed two new statutes the plaintiffs also seek to challenge. The first of these is Senate Bill 205, which prohibits the licensure of abortion clinics located within 2,000 feet of a K-8 public school, and which primarily impacts West

2. This waiver was subject to some additional conditions not relevant here.

Alabama and one other abortion clinic. This court will refer to this Act as the "school-proximity law."

The second newly enacted statute is Senate Bill 363, the Alabama Unborn Child Protection from Dismemberment Abortion Act, which West Alabama and Parker allege prohibits the dilation and evacuation (D&E) abortion procedure used in second-trimester abortions, and which primarily impacts West Alabama, the primary provider (and one of only two providers) of second-trimester abortions in the State. Tr. of June 17, 2016, Telephone Conference on Pls.' Mot. to Suppl. (doc. no. 48) at 16-17. Because West Alabama and Parker refer to this act as the "D & E law," this court will temporarily do so as well.[3]

## II. DISCUSSION

West Alabama and Parker request that the court allow them to supplement their complaint with three new claims: (1) a challenge to the regulation, as subsequently amended; (2) a challenge to the school-proximity law; and (3) a challenge to the D&E law.

Because the State Health Officer has conceded on the record that it is appropriate to lift the stay and to permit supplementation of the complaint with the challenge to the amended regulation, id. at 4, the stay will be lifted and West Alabama and Parker's motion to supplement will be granted as to that claim.[4] The only issue that needs discussion is whether to allow the addition of the challenges to the school-proximity law and the D&E law to this now-reopened and ongoing litigation.

### A. Legal Standard

■ Supplemental pleadings are governed by Federal Rule of Civil Procedure 15(d), which provides:

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time."

"As written," therefore, "Rule 15(d) contains no standards at all to guide the district court's analysis; it merely authorizes the district court to permit service of a supplemental pleading 'on just terms.'" U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 7 (1st Cir.2015), cert. denied, No. 15–1309, —— U.S. ——, 136 S.Ct. 2517, 195 L.Ed.2d 859, 2016 WL 1643545 (U.S. June 27, 2016). The Rule "is intended to give the court broad discretion in allowing a supplemental pleading." Fed. R. Civ. P. 15(d) advisory committee's note to 1963 amendment. However, there is still the question of how this discretion should be exercised.

Perhaps most important, this broad discretion obviously places upon a court a corresponding obligation to articulate adequately the basis for any decision reached based on the exercise of that discretion—not simply so as to facilitate appellate review, but also to assure that the discretion is exercised based upon reasoned judgment and not arbitrarily or out of mere instinct.

Toward this end, courts have articulated a few general guidelines. First, "in keeping with the overarching flexibility of Rule 15, courts customarily have treated requests to supplement under Rule 15(d) liberally." Gadbois, 809 F.3d at 7. (citation omitted). See also Harris v. Garner, 216 F.3d 970, 984 (11th Cir.2000) (noting "the liberal allowance of amendments or supplements to ... pleading

---

3. The court should not be understood to agree with West Alabama and Parker that the statute in fact covers or bans the D & E procedure; the statute's coverage is uncertain at this point. The court is merely relying—as it must at this time—upon the allegations of the proposed complaint.

4. The State Health Officer also contends that West Alabama and Parker are misreading the

regulation as being more burdensome than it actually is. West Alabama and Parker respond that it is counsel for the State Health Officer who is misreading the regulation—and that the interpretation the State Health Officer offers is not binding on the Department of Public Health. These are substantive matters that remain to be litigated.

under Rule 15"). Indeed, the Supreme Court has stated that supplementation can even include new claims and new parties. See Griffin v. Cty. Sch. Bd. of Prince Edward Cty., 377 U.S. 218, 227, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

■ "This liberality is reminiscent of the way in which courts have treated requests to amend under Rule 15(a)'s leave 'freely give[n]' standard." Gadbois, 809 F.3d at 7 (citations omitted). As Judge Haynsworth famously put it, "a supplemental pleading . . . is a useful device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay, and waste of separate actions which must be separately tried and prosecuted. So useful they are and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears. . . ." New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 28–29 (4th Cir.1963), cert. denied, 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964).

■ Nevertheless, while the court's discretion is broad, and while that discretion should be exercised liberally, it is not unlimited. First, there is the express limitation that any supplementation must be based on a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). And there is the obvious and reasonable requirement that the supplementation have "some relation" to what is sought to be supplemented. Rowe v. U.S. Fid. & Guar. Co., 421 F.2d 937, 943 (4th Cir.1970).

■ Moreover, experience, as revealed in case law, teaches that there are a number of factors that courts, in reaching their reasoned judgment, should weigh when relevant: Would the supplementation be futile? Would a nonmovant be prejudiced? Has there been unreasonable delay in presenting the supplementation? And would the supplementation facilitate the efficient resolution of current claims as well as any new ones? Gadbois, 809 F.3d at 7; see also 6A Wright & Miller, Fed. Prac. & Proc. Civ. § 1504 (3d ed.). Of course, none of these factors is necessarily disposi-

tive in and of itself. Rather, the court must "weigh the totality of circumstances." Gadbois, 809 F.3d at 7. In other words, "[e]verything depends on context." Id. The bottom line is: Would the supplementation promote "the efficient administration of justice"? New Amsterdam Cas. Co., 323 F.2d at 28–29.

## B. West Alabama and Parker's Challenges to the School-Proximity and D&E Laws

Applying the above principles and guidelines, the court finds that supplementation with West Alabama and Parker's challenges to the school-proximity and D&E laws is appropriate.

### 1. School-Proximity Law

■ There are a number of compelling reasons why West Alabama and Parker's school-proximity claim should be added to this litigation.

First, the stipulation the parties entered into as a part of the stay of these proceedings expressly permitted West Alabama and Parker, at the end of the stay, to "amend the complaint" and "seek other appropriate relief," W. Ala. Women's Ctr., 2015 WL 5164054, at *2—and notably without setting forth any limitation on what that amended complaint could include or what that other appropriate relief could be. Therefore, as a general matter, not only does the school-proximity claim meet Rule 15(d)'s requirement that it arise out of events that occurred after this litigation was filed, but the stipulation reflects that, as a practical matter, the litigation has not progressed to the point where the parties no longer expected new claims and new requests for relief based on new events.

Second, the current plaintiffs, West Alabama and Parker, are also plaintiffs for the school-proximity claim. And the current defendant, the State Health Officer, is not only also a defendant to the school-proximity claim, he is perhaps the only clearly appropriate one for that claim. Based on the plain text of the school-proximity law, the State Health Officer—who presides over the Alabama Department of Public Health—is the individual responsible for enforcing the law.

The law provides that, "The Alabama Department of Public Health may not issue or renew a health center license to an abortion clinic or reproductive health center that performs abortions and is located within 2,000 feet of a K-8 public school." Ex. B, Pls.' Mot. to Lift Stay and to File Suppl. Compl. (doc. no. 32-1) at 1. Indeed, in proceedings in this court, defense counsel conceded that the Health Officer is responsible for declining to issue or renew a license for a clinic that violates the law, and counsel admitted that the Health Officer might even be the individual who would measure the distance between a K-8 public school and an abortion clinic or reproductive health center if a dispute arose as to whether a facility's license should be renewed. Tr. of June 17, 2016, Telephone Conference at 9-10. As no other State department, agency, or official is mentioned in the statute by name, the State Health Officer would likely be called upon to defend any challenge to the school-proximity law, whether the plaintiffs were permitted to supplement their original complaint in this case or were forced to bring the challenge in a separate suit. See Am. Civil Liberties Union v. Fla. Bar, 999 F.2d 1486, 1490 (11th Cir.1993) ("Under United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant, even when that party has made no attempt to enforce the rule."). Thus, because the parties appear to be appropriately the same, they will, with the addition of the school-proximity claim, save the costs, both in money and time, of litigating a separate proceeding between them.

Third, the school-proximity claim and this litigation (in particular, the challenge to the original regulation) bear a substantial legal and evidentiary relationship to each other, and the resolution of the school-proximity claim in the context of this ongoing litigation will allow for a more efficient and expeditious resolution of that claim.

To begin, there is significant overlap between the legal analysis that the court has already performed, at length, in the litigation of the original claim in this case and the analysis it will need to perform in the litigation of the school-proximity claim. In analyzing the original regulation, this court applied the following analysis: The court observed that " 'An undue burden is an unconstitutional burden,' and a 'finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.' " W. Ala. Women's Ctr., 120 F.Supp.3d at 1307 (quoting Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 877, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion)). To determine whether the regulation imposed a substantial obstacle, this court asked "whether, examining the regulation in its real-world context, the obstacle is more significant than is warranted by the State's justifications for the regulation." Id. (quoting Planned Parenthood Se., Inc. v. Strange (Strange III), 33 F.Supp.3d 1330, 1337 (M.D.Ala.2014) (Thompson, J.) (internal citations and additional citations omitted)). The court analyzed "the obstacles and justifications for the regulation ..., as applied to plaintiffs, and then evaluate[d] whether the obstacles [were] more severe than warranted by the State's justifications." Id. See also Whole Woman's Health v. Hellerstedt, —— U.S. ——, 136 S.Ct. 2292, 2313, 195 L.Ed.2d 665, 2016 WL 3461560, at *20 (2016) (in applying the undue-burden standard, considering closures of abortion clinics due to an admitting-privileges requirement that "meant fewer doctors, longer waiting times, and increased crowding ... in light of [the requirement's] virtual absence of any health benefit"). In evaluating the obstacles, the court undertook a "two-step inquiry ... : [enquiring] first, whether the regulation will force [West Alabama] to remain closed; and second, if [West Alabama] remains closed, and no other clinic takes its place, determining the effect on Alabama women who seek abortions." W. Ala. Women's Ctr., 120 F.Supp.3d at 1307.

While the justifications for the original regulation differed from those that will probably be proffered for the school-proximity law, the analytical approach the parties and the court will employ for assessing the constitutionality of the school-proximity law will likely largely be the same. Thus, it appears

that the court and the parties are already fully familiar with the complex legal framework within which the school-proximity claim will need to be considered.

But more important, much, if not most, of the evidence that has already been presented to, and considered by, the court will likely be directly relevant to consideration of the school-proximity claim. Because the original regulation would allegedly have resulted in the permanent closure of West Alabama and because the school-proximity law will allegedly result in West Alabama's closure as well, a good bit of evidence already presented to the court on the alleged impact of the clinic's closure on Alabama women seeking an abortion, see id. at 1309–1312, will most likely also be directly relevant to the school-proximity claim. Admittedly, because the school-proximity law will allegedly result in the closure of not only West Alabama but a second abortion clinic, the evidence pertaining to the school-proximity claim will likely be more extensive. However, this difference does not detract from the fact that a good deal of the evidence already before the court will be relevant to the school-proximity claim. Indeed, neither West Alabama and Parker nor the State Health Officer disputes this. See Tr. of June 17, 2016, Telephone Conference at 14 (counsel for plaintiffs stating that they intend to present much of the same evidence on the school-proximity claim that this court heard during the litigation of the initial challenge to the staff privileges/covering physician regulation); id. at 12 (counsel for State Health Officer stating that "a lot of the evidence [presented as to the school-proximity claim] would be the same" as that presented in the original proceeding). Without question, the litigation of the school-proximity claim in this case will be much less costly and time-consuming, and will thus better promote "the efficient administration of justice." New Amsterdam Cas. Co., 323 F.2d at 28–29.

Fourth, one of the primary goals of Rule 15(d) is to aid in the complete resolution of disputes between parties. Id. at 28 (explaining that supplemental pleading "enabl[es] a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted"). As already observed, West Alabama and Parker filed the challenge to the original regulation to prevent permanent closure of the clinic due to a legal requirement enforced by the State Health Officer; now the regulation has been amended, but West Alabama still faces the threat of closure due to a law that will prevent the reissuance of its license by the State Health Officer. The dispute between West Alabama and the Health Officer, therefore, remains alive. In this straightforward and compelling sense, because this dispute over whether the clinic can continue to operate has not been completely resolved, supplementation is in the true spirit of Rule 15(d).

Fifth, the court has so far discussed the school-proximity claim's relationship with the challenge to the original regulation. The school-proximity claim also bears a relationship to the challenge to the amended regulation, a challenge which all parties agree should now be part of this litigation. Supplementation is warranted, in this regard, because resolution of the challenge to the amended regulation and that of the school-proximity claim are somewhat interdependent. If West Alabama and Parker's challenge to the school-proximity law is unsuccessful and West Alabama is forced to close at the end of 2016, their further litigation of the amended-regulation challenge in this court and on appeal would become moot; it would make little sense to hold a trial or grant permanent relief as to West Alabama and Parker's amended-regulation claim until a preliminary assessment is made that the clinic is likely to prevail on its challenge to the school-proximity law, and thus likely to remain open. Given the interrelated nature of the two challenges, it makes sense to consider them in one lawsuit. The determination of how these claims should be resolved so as to keep down litigation costs and conserve judicial resources can be more easily and efficiently made in one lawsuit rather than two.

Sixth, the posture of this litigation supports supplementation. Admittedly, on the one hand, there was much evidentiary development in this case with regard to the

original challenge to the Health Department regulation; but this was done because the challenge needed expeditious resolution. However, on the other hand, this court now has a new challenge to the regulation as amended; the Health Officer has yet to respond to this new claim; no uniform scheduling order with discovery and other deadlines has ever been entered; and no pretrial conference has been held. Supplementation would essentially come at the outset of the new challenge to the amended regulation.

In conclusion, for the numerous reasons given above, the court holds that Rule 15(d) supplementation is appropriate for West Alabama and Parker's school-proximity claim against the State Health Officer.

### 2. The D&E Law

Whether, with an eye on the big picture as well as the details, supplementation is appropriate as to West Alabama and Parker's challenge to the D&E law is a closer question. Unlike with regard to the original regulation and the school-proximity law, West Alabama and Parker do not contend that the D&E law, which they allege bans the D&E abortion procedure, would result in the closure of West Alabama. Further, West Alabama and Parker have named additional defendants in their challenge to the D&E law. However, for several reasons—including that the D&E claim is sufficiently related to the claim that has been and one of the two that will be presented in this litigation—the court holds that the D&E claim should be added to this litigation.

First, the same general circumstances that support adding the school-proximity claim to this litigation also support adding the D&E claim. As a predicate for the application of Rule 15(d), the D&E claim arose after the original complaint was filed. The parties' stay stipulation reflects that they understood that new claims could be added to this litigation. And the D&E claim is in the same posture in this litigation as are the challenges to the new regulation and the school-proximity law.

Second, the analysis of and evidence relevant to the D&E claim will likely significantly overlap not only with that previously presented with regard to the challenge to the original regulation but also with that likely to be presented with regard to the school-proximity challenge. Although the D&E law applies statewide, its primary impact is alleged to be on West Alabama. Because West Alabama is one of only two clinics in the State that provide abortions after 15 weeks and because all such procedures these clinics provide (and are able to provide) are performed using the D&E method that they contend the law bans, the D&E law will effectively eliminate access to abortions after 15 weeks even though the State allows abortion up to 20 weeks.[5] Tr. of June 17, 2016, Telephone Conference at 16. In short, for the relevant group of women (those seeking D&E abortions), the impact of the D&E law will, in a sense, be quite similar to that of the original regulation and the school-proximity law: West Alabama and the other clinic's doors will be shut to women in Alabama seeking abortions after 15 weeks.

As a result, the undue-burden analysis discussed above will in some measure also apply to West Alabama and Parker's challenge to the D&E law, and the evidence already received with regard to the original-regulation challenge and to be received with regard to the school-proximity claim will be relevant. Admittedly, in applying the undue-burden standard, the court must analyze the obstacles to abortion access for the "group for whom the law is a restriction." Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 894, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion). While that group presumably would be smaller in regards to the challenge to the D&E law, the evidence and analysis of the impact and obstacles would nonetheless still overlap significantly.

Third, there is an important practical link between the D&E law and the school-proximity law that supports adding the D&E law

**5.** West Alabama and Parker admit that abortions after 15 weeks may also be performed using an induction procedure. However, they contend that neither West Alabama nor the other clinic that provides abortions after 15 weeks is equipped to perform this procedure; it involves the induction of labor and, accordingly, can be a multi-day procedure. Induction must be performed in a hospital, so neither clinic would be an adequate setting.

claim to this litigation. Were the court to conclude that enforcement of the school-proximity law should not be enjoined, this decision would allegedly result in the closure of West Alabama by the end of 2016, a result that would arguably render the D&E challenge moot. Permitting these claims to be litigated together will avoid the possibility of unnecessary adjudication of a claim and will eliminate the possible need for coordination between different courts.

Finally, the addition of the following different defendants does not warrant denial of leave to supplement this litigation with the challenge to the D&E law: Luther Strange, in his official capacity as Alabama Attorney General; Lyn Head, in her official capacity as District Attorney for Tuscaloosa County; Robert L. Broussard, in his official capacity as District Attorney for Madison County; Dr. H. Joseph Falgout, in his official capacity as Chairman of the Alabama Board of Medical Examiners; and Dr. James E. West, in his official capacity as Chairman of the Medical Licensure Commission of Alabama.

■ As already noted, it is well-established that supplemental pleadings under Rule 15(d) are appropriate vehicles for the addition of new parties—including new defendants—involved in events that arose after the filing of the original complaint. See Griffin, 377 U.S. at 227, 84 S.Ct. 1226. The inclusion of more defendants through supplementation is nothing unusual.

Moreover, as a practical matter, there is nothing to indicate that the addition of these defendants would make the resolution of any claim in these proceedings less efficient. Nor would these defendants' presence prejudice the State Health Officer. The State Health Officer already has to defend two of the three claims in this case. Moreover, because there is an evidentiary overlap between the school-proximity and D&E claims, the State Health Officer, though not a party to the D&E claim, will have the advantage, if he wants, of monitoring the evidence that is developed with regard to that claim.

In any event, that a defendant defends fewer than all the claims in a case is common, and nothing special in this litigation makes it otherwise unusual. To the extent that the State Health Officer is uninvolved in the enforcement of the D&E law, he need not actively participate in defending against this claim.

\*\*\*

In conclusion, because of the relationship, both as to law and evidence, the D&E claim, the school-proximity claim, and the amended-regulation challenge bear to the claim this court has already addressed; because of the relationship the three claims have among themselves; because supplementation will not unfairly prejudice the State Health Officer; and because of the current posture of this litigation, the court concludes that it would be more efficient and just to try the three claims together in this lawsuit. Or, to put it another way, the benefit of trying these three claims together strongly outweighs any disadvantage that might arise.

Moreover, it is worth noting that, because the amended regulation, the school-proximity law, and the D&E law determine how, to what extent, and even whether, at all, West Alabama can provide abortions, West Alabama and Parker could certainly have brought a single lawsuit challenging all three. For the same reason, West Alabama and Parker should now be able to add and challenge at one time all three in this litigation.

## C. Alabama Women's Center and Robinson-White's Challenges to the School-Proximity and D&E Laws

■ The court has already concluded that West Alabama and Parker should be allowed to supplement their complaint with their challenges to the school-proximity and the D&E laws. The additional question now before the court is whether, with the proposed supplemental complaint, Alabama Women's Center, located in Huntsville, and its medical director, Yashica Robinson-White, M.D., should be allowed to join in these challenges. The answer is yes.

First, West Alabama and Parker's claims and Alabama Women's Center and Robinson-White's claims are virtually identical. Indeed, it appears at this time that the law and the evidence will be essentially the same.

In considering West Alabama's claims, the court will need to hear extensive evidence regarding the availability of abortions—and, with respect to the challenge to the alleged ban on D&E, mid-second-trimester abortions—elsewhere in the State, in order to determine how severely women's rights would be burdened by the inability to obtain an abortion (or a mid-second-trimester abortion) at West Alabama. See Planned Parenthood Se., Inc. v. Strange (Strange III), 33 F.Supp.3d 1330, 1342 (M.D.Ala.2014) (Thompson, J.) (assessing whether an abortion restriction imposed an undue burden by "first, determining the effect of the requirement on current and potential abortion providers"); see also West Ala. Women's Ctr., 120 F.Supp.3d at 1309–12 (assessing the effect of the closure of one clinic on women by considering evidence regarding the capacity and accessibility of the other remaining abortion providers in the State). Whether the challenged laws will force other clinics, such as Alabama Women's Center, to close or to stop providing certain procedures is directly relevant—indeed, central—to the adjudication of West Alabama's claims. Thus, the court will need to hear evidence and determine the impact of the challenged laws on Alabama Women's Center and Robinson-White regardless of whether they are plaintiffs in this case. It would be a total waste for resources and time to force Women's Center and Robinson-White to file a separate lawsuit and present this evidence again.

Second, had West Alabama and Parker not sought to include the Alabama Women's Center and Robinson-White as plaintiffs, these new plaintiffs certainly could have moved to intervene, and this court would have granted them permission to do so, in light of the largely overlapping evidence and because the new plaintiffs' "claim[s] . . . share[ ] with the main action [ ] common question[s] of law or fact." Fed. R. Civ. P. 24(b) (stating circumstances under which permissive intervention is appropriate).

\* \* \*

Accordingly, for the reasons stated above, it is ORDERED as follows:

(1) Plaintiffs West Alabama Women's Center and William J. Parker's motion to lift the stay and file a supplemental complaint (doc. no. 32) is granted.

(2) This case is reopened.

(3) The stay previously entered (doc. no. 31) is dissolved.

(4) The proposed first supplemental complaint (doc. no. 32-1) may be filed.